# UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF NEW YORK

GENERAL STAR INDEMNITY COMPANY,  )
 )
                Plaintiff,  )    **Civil Action No.:** 14-cv-3579
 )
     v.  )
 )
 )
DRIVEN SPORTS, INC.,  )
 )
              Defendant.  )
 )
 )
 )
 )

## DRIVEN SPORTS, INC.'S OPPOSITION TO GENERAL STAR'S
## MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page

I.  NEW YORK LAW REQUIRES GENERAL STAR TO DEFEND INSURED .......... 1

    A.  The *Craze Suits* Expressly Or Implicitly Allege Disparagement Based On "Publication…Of Material That…Disparages [A]n Organization's Products" ............................................................................................................ 1

        1.  Disparagement Is Alleged Explicitly and Implicitly .............................. 1

        2.  Case Law Supports Coverage for Disparagement Here ........................ 3

    B.  The "Failure to Conform" Exclusion (g) Is Inapplicable ................................. 7

        1.  General Star Bears the Burden of Proving the Exclusion Applies and is Subject to No Other Reasonable Interpretation .......... 7

        2.  The Failure to Conform Exclusion Does Not Apply ............................. 7

        3.  Application of the Failure to Conform Exclusion Is Not Proven ....... 10

II.  GENERAL STAR HAS NO RIGHT TO RECOUP ITS DEFENSE EXPENSES ........................................................................................................ 12

    A.  General Star's Admission That It Had No Recoupment Right ..................... 12

    B.  New York State Courts Have Never Recognized A Right to Reimbursement ................................................................................................. 13

    C.  The New York Court of Appeals Would Not Likely Allow Reimbursement ................................................................................................. 13

    D.  The Majority of Jurisdictions Do Not Support a Right to Reimbursement ................................................................................................. 15

    E.  General Star's Cases Do Not Establish New York Law ................................. 16

III.  THE GENERAL STAR POLICY IS NOT SELF-LIQUIDATING ........................... 18

    A.  The Policy Language Is Ambiguous ................................................................. 18

    B.  Defense Costs Are Not Included In Supplementary Payments ..................... 19

    C.  The Cases Cited By General Star Do Not Support Its Position ..................... 23

# TABLE OF AUTHORITIES

Page(s)

FEDERAL CASES

*Acme United Corp. v. St. Paul Fire & Marine Ins. Co.*,
214 F. Appx. 596 (7th Cir. 2007)..............................................................4

*Bridge Metal Indus., L.L.C. v. Travelers Indem. Co.*,
812 F. Supp. 2d 527 (S.D.N.Y. 2011)......................................................14

*CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*,
720 F.3d 71 (2d Cir. (N.Y.) 2013) ...........................................................10

*Doe v. CIGNA Life Ins. Co.*,
304 F. Supp. 2d 477 (W.D.N.Y. 2003) .....................................................20

*E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.*,
590 F. Supp. 2d 1244 (N.D. Cal. 2008) ...............................................4, 11

*Edwards Theatres, Inc. v. United National Ins. Co.*,
126 Fed. Appx. 831 (9th Cir. (Cal.) 2005)...............................................10

*Elite Brands, Inc. v. Pa. Gen. Ins. Co.*,
164 F. Appx. 60 (2d Cir. 2006)..................................................................4

*Emplrs Reinsurance Corp. v. Mid-Continent Cas. Co.*,
202 F. Supp. 2d 1221 (D. Kan. 2002) .................................................24, 25

*Ill. Union Ins. Co. v. NRI Constr.*,
846 F. Supp. 2d 1366 (N.D. Ga. 2012) ...............................................16, 23

*Inc. v. St. Paul Fire & Marine Ins. Co.*,
590 F. Supp. 2d 1244 (N.D. Cal. 2008) ...............................................4, 11

*Infor Global Solutions (Mich.) v. St. Paul Fire & Marine Ins.*,
686 F. Supp. 2d 1005 (N.D. Cal. 2010) .....................................................9

*Keenan Hopkins Schmidt & Stowell Contrs., v. Cont'l Cas. Co.*,
653 F. Supp. 2d 1255 (M.D. Fla. 2009)....................................................24

*N.H. Ins. Co. v. Power-O-Peat*,
907 F.2d 58 (8th Cir. 1990) .....................................................................12

*Nat'l Union Fire Ins. Co. v. W. Lake Acad.*,
548 F.3d 8 (1st Cir. (Mass.) 2008)...........................................................23

*Pinto v. Allstate Ins. Co.*,
  221 F.3d 394 (2d Cir. 2000)..................................................................15

*R.C. Bigelow, Inc. v. Liberty Mut. Ins. Co.*,
  287 F.3d 242 (2d Cir. 2002)..................................................................11

*Safety Dynamics, Inc. v. Gen. Star Indem. Co.*,
  475 F. Appx. 213 (9th Cir. (Az.) 2012) ...................................................8

*Skylink Techs., Inc. v. Assurance Co. of Am.*,
  400 F.3d 982 (7th Cir. 2005) ................................................................12

*Travelers Ins. Co. v. 633 Third Assocs.*,
  14 F.3d 114 (2d Cir. 1994)....................................................................13

*Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co.*,
  598 F.3d 257 (6th Cir. 2010) ................................................................16

*United Nat'l Ins. Co. v. SST Fitness Corp.*,
  309 F.3d 914 (6th Cir. 2002) ................................................................16

*Winklevoss Consultants, Inc. v. Federal Ins. Co.*,
  11 F. Supp. 2d 995 (N.D. Ill. 1998) ........................................................6

*XL Specialty Ins. Co. v. Level Global Investors, L.P.*,
  874 F. Supp. 2d 263 (S.D.N.Y. 2012)....................................................18

*Young v. Am. Cas. Co.*,
  416 F.2d 906 (2d Cir. 1969)..................................................................15


## STATE CASES

*242-44 E. 77th St., LLC v. Greater N.Y. Mut. Ins. Co.*,
  31 A.D.3d 100 (1st Dept. 2006)............................................................18

*Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*,
  2 A.3d 526 (Pa. 2010) ..........................................................................13

*Automobile Ins. Co. of Hartford v. Cook*,
  7 N.Y.3d 131 (2006) .............................................................................14

*Belt Painting Corp. v. TIG Ins. Co.*,
  100 N.Y.2d 377 (2003) .........................................................................19

*Breed v. Insurance Co. of N. Am.*,
  46 N.Y.2d 351 (1978) ...........................................................................19

*Cone v. Nationwide Mut. Fire Ins. Co.*,
    75 N.Y.2d 747 (1989) ..................................................................................7

*Cont'l Cas. Co. v. Rapid-Am. Corp.*,
    80 N.Y.2d 640 (1993) ..................................................................................7

*Dupree v. Scottsdale Ins. Co.*,
    96 A.D.3d 546 (1st Dept. 2012) .................................................................18

*Fed. Ins. Co. v. Kozlowski*,
    18 A.D.3d 33 (1st Dept. 2005) ...................................................................17

*Fitzpatrick v. American Honda Motor Co*.,
    78 N.Y.2d 61 (1991) ....................................................................................1

*Frontier Insulation Contrs. v. Merchants Mut. Ins. Co*.,
    91 N.Y.2d 169 (1997) ..................................................................................1

*Gen. Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.*,
    215 Ill. 2d 146 (Ill. 2005) .........................................................................14

*Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*,
    692 S.E.2d 605 (2010) ..............................................................................11

*Hartford Cas. Ins. Co. v. Swift Distrib., Inc.*,
    59 Cal. 4th 277 (2014) ................................................................................5

*JMZ USA, Inc. v. Lumbermens Mut. Cas. Co.*,
    36 A.D.3d 555 (1st Dept. 2007) ..................................................................5

*Julie Research Labs., Inc. v. Gen. Resistance, Inc.*,
    25 A.D.2d 634 (1st Dept. 1966) ...............................................................4, 5

*Kenavan v. Empire Blue Cross & Blue Shield*,
    248 A.D.2d 42 (1st Dept. 1998) ..................................................................7

*Kershaw v. Hosp. for Special Surgery*,
    114 A.D.3d 75 (1st Dept. 2013) .................................................................24

*Matter of E. 51st St. Crane Collapse Litig.*,
    103 A.D.3d 401 (1st Dept. 2013) ..........................................................18, 21

*Matter of Mostow v. State Farm Ins. Cos*.,
    88 N.Y.2d 321 (1996) ................................................................................19

*Moneta Dev. Corp. v. Generali Ins. Co. of Trieste & Venice*,
    212 A.D.2d 428 (1995) ..............................................................................19

*Nat'l Sur. Corp. v. Immunex Corp.,*
297 P.3d 688 (Wash. 2013)..........................................................................15

*Nat'l Union Fire Ins. Co. v. Ambassador Group., Inc.,*
157 A.D.2d 293 (1990) .............................................................................17

*Natural Organics, Inc. v. OneBeacon Am. Ins. Co.,*
102 A.D.3d 756 (2d Dept. 2013) ..........................................................5, 6, 10

*New York Cent. Mut. Fire Ins. Co. v. Sweet,*
16 A.D.3d 1013 (3d Dept. 2005) ..............................................................19

*Northville Indus. Corp. v. National Union Fire Ins.,*
657 N.Y.S.2d 564 (1997)...........................................................................20

*Nussbaum Diamonds, LLC v. Hanover Ins. Co.,*
64 A.D.3d 488 (1st Dept. 2009)....................................................................7

*People v. Olah,*
300 N.Y. 96 (1949) ..................................................................................24

*RJC Realty Holding Corp. v. Republic Franklin Ins. Co.,*
2 N.Y.3d 158 (2004) ...................................................................................7

*Sincoff v. Liberty Mut. Fire Ins. Co.,*
11 N.Y.2d 386 (1962) .................................................................................7

*Staten Is. Molesi Social Club v. Nautilus Ins. Co.,*
39 A.D.3d 843 (2d Dept. 2007) .....................................................................1

*Total Call Internat. Inc. v. Peerless Ins. Co.,*
181 Cal. App. 4th 161 (2010) ....................................................................12

*Trustees of Princeton Univ. v. Nat'l Union Fire Ins. Co. of Pittsburgh,*
15 Misc. 3d 1118(A) (N.Y. S.Ct. 2007) .......................................................17

*Westview Assocs. v. Guar. Nat'l Ins. Co.,*
95 N.Y.2d 334 (2000).................................................................................21

## Docketed Cases

*Admiral Ins. Co. v. Grace Indus.,*
No. 06-CV-02955, 2009 U.S. Dist. LEXIS 63785 (E.D.N.Y. 2009)......................25

*Axis Reinsurance Co. v. Bennett,*
No. 07 Civ. 7924, 2008 U.S. Dist. LEXIS 53921 (S.D.N.Y. June 26, 2008)..........17

*Dollar Phone Corp. v. St. Paul F&M Ins.*,
No.CV-09-1640, 2012 U.S. Dist. LEXIS 45591 (E.D.N.Y. Mar. 9, 2012) ........................4, 10

*Flowers v. Max Specialty Ins. Co.*,
No. 13-0262, 2014 W. Va. LEXIS 630 (W. Va. June 4, 2014) ...............................................21

*Gotham Ins. Co. v. GLNX, Inc*.
No. 92 Civ. 6415, 1993 U.S. Dist. LEXIS 10891 (S.D.N.Y. Aug. 6, 1993) ...........................16

*Ill. Union Ins. Co. v. N. County Ob-Gyn Med. Group*,
No. 09cv2123-LAB, 2010 U.S. Dist. LEXIS 50095 (S.D. Cal. May 18, 2010).....................22

*Jarrow Formulas, Inc. v. Steadfast Ins. Co.*,
No. 2:10-CV-801-JST, 2011 U.S. Dist. LEXIS 40200 (C.D. Cal. Apr. 12, 2011).................12

*Jewelers Mut. Ins. v. Milne Jewelry*,
No.2:06-CV-243, 2006 U.S. Dist. LEXIS 90551 (D. UT Dec. 14, 2006) ................................9

*Max Specialty Ins. Co. v. WSG Investors, LLC*,
NO. 09-CV-5237, 2012 U.S. Dist. LEXIS 108601 (E.D.N.Y. Apr. 20, 2012) ......................17

*Pasco v. State Auto. Mut. Ins. Co.*,
No. 99AP-430, 1999 WL 1221633 (Ohio Ct. App. Dec. 21, 1999) .......................................20

*PCB Piezotronics, Inc. v. Kistler Instrument Corp.*,
No. 96-CV-0512E, 1997 U.S. Dist. LEXIS 20783 (W.D.N.Y. Dec. 30, 1997) .....................11

*Pennfield Oil Co. v. Am. Feed Indus. Ins. Co. Risk Retention Group, Inc.*,
No. 8:05-CV-315, 2007 U.S. Dist. LEXIS 21456 (D. Neb. Mar. 12, 2007) ...........................9

*Tria Beauty, Inc. v. Nat'l Fire Ins. Co.*,
No. C 12-05465, 2013 U.S. Dist. LEXIS 71499 (N.D. Cal. May 20, 2013) .........................10

*U.S. Specialty Ins. v. Liberty Partners*,
No. 11 Civ. 3736, 2011 U.S. Dist. LEXIS 128948 (S.D.N.Y. Nov. 7, 2011) ........................17

*Wiegert-Stathes v. Am. Family Mut. Ins. Co.*,
No. A-08-1041, 2009 Neb. App. LEXIS 179 (Neb. Ct. App. Oct. 20, 2009) ........................24

**STATE RULES AND STATUTES**

Civ. Code § 1750. ...................................................................................................................2

**OTHER AUTHORITY**

*2011 ABA Insurance Coverage Litigation Committee CLE Seminar*, March 3-5, 2011:
Insurer Reimbursement from a Policyholder.........................................................................15

*Merriam-Webster.com*. Merriam-Webster, n.d. Web. 6 Aug. 2014 .......................................19, 25

## I.    NEW YORK LAW REQUIRES GENERAL STAR TO DEFEND INSURED

### A.    The *Craze Suits* Expressly Or Implicitly Allege Disparagement Based On "Publication…Of Material That…Disparages [A]n Organization's Products"

#### 1.    Disparagement Is Alleged Explicitly and Implicitly

The *Craze suits* allege far more than General Star suggests in its motion. The allegations and extrinsic evidence[1] reflect express and implied disparaging statements against competitors.

Driven Sports is not only alleged to publish statements on its labels and in stores but also on its websites expressly identified in the *Stewart* complaint and referred to in the other three complaints.[2] **[SMF ¶32 (¶14 fn. 2)]** This Driven Sports webpage characterized arginine, a common ingredient in competing products, as "**worthless** [but it is] include[ed] in [competitors'] **poorly designed products.**" It criticizes competitors' scientific research and even the "awful" taste of their products: "We can only assume that other companies with flavored products **spend LITTLE OR NO TIME on the taste of their products**, which is probably about the **same amount of time they spend on the science backing their formulas!** We … have tried countless other products. **Some of them taste so awful** that they are hard to finish." In contrast Craze is touted as giving "**unmatched results**, **where others have failed**….[the] ultimate in pre-workout power!", "*deliver[ing] the best workouts of your life!", "DOES NOT USE CRAPPY FILLERS"*, and as having "perfect taste."[3] **[SMF ¶33]**

One of the direct competitors brought the *Nutrition* suit **[SMF ¶25 (¶¶11, 12)]** alleging that Driven Sports' publication of false statements has had "the tendency to deceive a substantial segment of the public…" **[SMF ¶25 (¶37)]** that the published statements are "material because [they are] likely to influence a consumer's purchasing decision." **[SMF ¶25 (¶38)]** and as a

---

[1]The New York Court of Appeals has eschewed "wooden application of the 'four corners of the complaint' rule," in favor of "a rule requiring the insurer to [also] provide a defense where, notwithstanding the complaint allegations, underlying facts made known to the insurer create" a reasonable possibility of coverage. *Fitzpatrick v. American Honda Motor Co*., 78 N.Y.2d 61, 66, 70 (1991); *see also Frontier Insulation Contrs. v. Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 175 (1997); *Staten Is. Molesi Social Club v. Nautilus Ins. Co.*, 39 A.D.3d 843, 844 (2d Dept. 2007).

[2]The *Wagner* and *Olvera* Complaints allege Driven Sports "**advertises**, labels and **markets** the products **in a misleading manner.**" **[SMF ¶27 & 29 (¶8)]** The *Nutrition* action alleges "Defendants have **falsely** labeled **and marketed** Craze since its inception in various ways. **[SMF ¶25 (¶26)]** (emphasis added).

[3]This publication was provided to General Star in a letter from Driven Sports' counsel dated February 5, 2014 prior to General Star's Denial letter of March 18, 2014. **[SMF ¶34]**

consequence it has "suffered … both an ascertainable economic loss of money and reputational injury by the diversion of business from Plaintiff to Defendants and the loss of good will in Plaintiff's products." **[SMF ¶25 (¶¶33, 40)]** Nutrition seeks damages. **[SMF ¶25 (Prayer ¶¶2, 3, 5, 6, 7)]** Nutrition alleges that "[i]n addition to Plaintiff's damages, **Defendants' actions have harmed and discredited the industry as a whole**." **[SMF ¶25 (¶25)]**

The three class action suits allege that Driven Sports' publication of false and misleading information, particularly claiming competitors' products to be inferior to Craze, has harmed competitors and consequently has harmed consumers. Consumers may sue for damages under California's and other state's unfair competition statutes when competitors are disparaged.

The *Olvera* suit, alleged that Driven Sports published false statements that violate various California statutes including the Consumer Legal Remedies Act ("CLRA") **[SMF ¶27 (¶¶11, 43, 45, 59)]**, which she is entitled to enforce **[SMF ¶27 (¶¶60, 61, 62, 63)]**, harming the public and the class by "unlawful methods of competition and or unfair acts as defined by Civ. Code § 1750, *et seq.*" including practices prohibited by the CLRA such as **"disparaging the goods, services, or business of another** by false or misleading representations of fact." **[SMF ¶27 (¶¶64, 66, 67)(emphasis added)]** Olvera claims to have been harmed by this conduct permitting damages. **[SMF ¶27 (¶¶67, 70)]**

The *Wagner* suit identically alleged that Driven Sports published false statements that violate various California statutes including the CLRA **[SMF ¶29 (¶¶11, 43, 45, 59)]**, which he is entitled to enforce **[SMF ¶29 (¶¶60, 61, 62, 63)]**, harming the public and the class by "unlawful methods of competition and/or unfair acts as defined by Civ. Code § 1750, *et seq.*" including practices prohibited by the CLRA such as **"disparaging the goods, services, or business of another** by false or misleading representations of fact." **[SMF ¶29 (¶¶64, 66, 67) (emphasis added)]** Wagner claims damages from this conduct. **[SMF ¶29 (¶¶67, 70)]**

The *Stewart* suit makes the same allegations as the *Olvera* and *Wagner* suits that Driven Sports published false statements which violate the unfair competition statutes of Illinois, California, and other states **[SMF ¶32 (¶¶5, 14, 23, 27)]** including Civ. Code § 1750, *et seq.*

which prohibits disparaging competitors. **[SMF ¶32 (¶23)]** Stewart alleges that he and members of the class have been harmed by this conduct entitling them to compensatory damages. **[SMF ¶32 (¶¶22, 27, 48, prayer (b))]**

All *Craze suits* directly allege express disparagement of products competing with Craze. One specific competitor, Nutrition, is expressly identified in the related *Craze suits,* but all competitors are disparaged by implication. The plaintiffs all claim a right to seek damages for the disparagement of Craze's competitors based on statutes in addition to common law. The statutes and the common law do not require disparagement to be limited to a single competitor.

The disparagement claims are in addition to other allegations of mislabeling: allegedly failing to list an ingredient. Disparagement cannot be conflated with mislabeling. The contested mislabeling is a counter-attack on Driven Sports because of its disparagement of competitors' products as "worthless" and "awful tasting"; it is not the same as the disparagement.

### 2.      Case Law Supports Coverage for Disparagement Here

General Star argues that "disparagement" requires an alleged statement by the insured that casts a competitor in a negative light by expressly naming the competitor or referencing the competitor through **necessary implication,** citing a trio of New York disparagement cases. **[Dkt. 19-1:17]** Those allegations are made in the class action suits: publication of false advertising statements that violate state statutes protecting competitors from unfair competition by disparagement. There is evidence of a web advertisement derogating competitors' products and touting Craze as superior to competing products. The *Nutrition* action expressly alleges that Driven Sports' statements harmed its reputation and damaged its goodwill while deceiving consumers. The accused publications expressly and implicitly derogate competitors.

Driven Sports' publications allegedly disparage all its competitors. Any one of them may have had a claim for disparagement. It is illogical to suggest that because a statement disparages more than one competitor it does not constitute disparagement. Any one of the multiple disparaged competitors has a claim that the disparaging statement harmed them specifically. The class members are authorized to sue on behalf of all disparaged competitors. There is no

authority limiting disparagement to a singular competitor.

*Dollar Phone*[4] held that "disparage" requires an allegation that the advertisement specifically referred to the competitor's products or touted one's own products as superior to those of its competitors."[5] The Court also recognized that comparisons to multiple competitors can satisfy the disparagement requirement and that specific competitors need not be named.[6]

> This does not … mean that the competitor's product must be identified by name and **it may be enough that there be some identifying statement that compares the advertised product to those sold by competitors**.

The *Craze suits* allege harm from the web advertisements that directly refer to competitors' products and tout Driven Sports' products as superior to those of its competitors. *Dollar Phone's* requirements are met. The allegations here are far more direct than those in *Dollar Phone* where the advertisement only falsely stated the number of minutes on a prepaid phone card which, the Plaintiff alleged, implied that its products were overpriced. Here, the *Craze suits* allege Driven Sports' false statements about its contents and about competitors' products deceived consumers and disparaged and harmed competitors. The reasonable inference of the allegations is that the mislabeling implied a negative quality about competing products. Certainly the referenced advertising statements harshly criticizing competitors' products as "worthless", "poorly designed," and "awful" tasting with "crappy fillers," while touting the superiority of Driven Sports' own product, easily meets the disparagement element.

*Elite Brands*[7] simply held that disparagement required "specific assertions of unfavorable facts reflecting upon the rival product" citing *Julie Research Labs*,[8] also cited by General Star.

---

[4]*Dollar Phone Corp. v. St. Paul F&M Ins.*, No.CV-09-1640, 2012 U.S. Dist. LEXIS 45591 (E.D.N.Y. Mar. 9, 2012).

[5]*Id.* at *26.

[6]*Id.* at *25- 26. *citing, e.g. Acme United Corp. v. St. Paul Fire & Marine Ins. Co.*, 214 F. Appx. 596, 599-600 (7th Cir. 2007) (advertisements stating that insured's titanium products were "sharper, more durable, and longer lasting" drew sufficient comparison to plaintiff's steel products); and *E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co*., 590 F. Supp. 2d 1244, 1249, 1253 (N.D. Cal. 2008) (advertisement asserting that insured was the "'only' producer of 'all Java' and 'fully J2EE' software solutions" and that this "was an 'important differentiator' between competing products" disparaged insured's competitors by "clear implication").

[7]*Elite Brands, Inc. v. Pa. Gen. Ins. Co.*, 164 F. Appx. 60 (2d Cir. 2006).

[8]*Id.* at 62; citing *Julie Research Labs., Inc. v. Gen. Resistance, Inc.*, 25 A.D.2d 634, 634-35 (1st Dept. 1966).

*Julie Research* was not an insurance coverage case and concerned a common law claim for disparagement holding "[m]ere general statements of comparison, declaring that the defendant's goods are the best on the market, or are better than the plaintiff's, are privileged so long as they contain no specific assertions of unfavorable facts reflecting upon the rival product." *Id.* But here there are numerous assertions of unfavorable facts reflecting on rival products. The statements here specifically denigrate the quality of the competitors' products, expressly and by implication.

In *JMZ*,[9] the complaint only alleged the sale of products in discount stores which was claimed to derogate the quality of the product. The court held there was no injury arising out of a publication since injury instead arose from the presence of the products in the discount store. Here the Craze suits allege publication of false statements on labels as well as in advertising, including Internet web pages denigrating competitors' products.

General Star also cites the recent *Swift*[10] case which held that common law disparagement required a reference to the plaintiff's product or business that clearly derogates it. But *Swift* clarified that the "disparagement" can be by "express mention **or by clear implication.**" *Id.* at 284 (emphasis added). General Star cannot deny that Driven Sports' publications derogated competing products by clear implication. The underlying plaintiffs—including Nutrition---had no trouble understanding the negative implications, even if General Star professes not to. *Swift* found no disparagement because the only statement was a general claim of superiority.

*Natural Organics* addressed allegations of wrongful termination of an exclusive distributorship agreement and resulting consumer confusion caused by a Natural Organics press release saying that HON was its exclusive distributor in the Nordic region which allegedly detracted from NPN's **reputational goodwill** and trade.[11] The court held those indirect statements fell "within the policy's coverage for…disparagement. The statement that HON had been appointed the exclusive distributor…could imply that NPN's inventory…was

---

[9] *JMZ USA, Inc. v. Lumbermens Mut. Cas. Co.*, 36 A.D.3d 555 (1st Dept. 2007).

[10] *Hartford Cas. Ins. Co. v. Swift Distrib., Inc.*, 59 Cal. 4th 277 (2014).

[11] *Natural Organics, Inc. v. OneBeacon Am. Ins. Co.*, 102 A.D.3d 756, 758 (2d Dept. 2013) (emphasis added).

unauthorized." *Id.* The allegation of harm to NPN's reputational goodwill is analogous to *Nutrition's* allegation that it suffered harm to its reputation and goodwill due to Driven Sports' false statements, implying the inferiority of *Nutrition's* products and all industry products.

Contrary to General Star's argument, a duty to defend will arise from "factual allegations that [the insured] made false negative comparative statements about [claimant's] goods, causing [claimant] to lose sales. It does not matter that these allegations may not meet the technical requisites for stating a commercial disparagement claim."[12] The *Nutrition* suit illustrates how competitors may be implicitly disparaged by Driven Sports' statements.

Every case cited by General Star concerned common law disparagement claims by competitors. Yet "[t]he policy offense of 'disparagement' is not synonymous with common law commercial disparagement." *Id.* at 1000. Here, three class action suits allege disparagement of all of Driven Sports' competitors, brought under one or more "unfair competition" statutes that provide damages for disparaging competitors. Disparagement is not defined or limited to common law disparagement in the Policy. It therefore must include statutory disparagement claims as well. It is reasonably inferable from the allegations of statutory disparagement that Driven Sports' alleged false advertising implied that its competitors' products were inferior. In fact, the web advertising specifically denigrates Driven Sports' competitors and products based on bad scientific research as "worthless," "awful" tasting, containing "crappy fillers," and useless ingredients. It would be difficult to more thoroughly derogate competitors' products. The class plaintiffs and Nutrition all understood the statements that way and sued for the damages the published statements allegedly caused because of harm to reputation and goodwill, loss of sales, consumer confusion, and damage to the entire industry.

---

[12]*Winklevoss Consultants, Inc. v. Federal Ins. Co.,* 11 F. Supp. 2d 995, 999-1000 (N.D. Ill. 1998) ("The claims that Winklevoss falsely advertised in its promotional materials that its software was capable of "allow[ing] senior actuaries to be 'hands on' with respect to consulting assignments" but Lynchval's software was not; that Winklevoss made false comparative statements about the speed of its software relative to competitors; and the specific allegation that Winklevoss made misleading statements about the nature of both parties' products all satisfy the above laymen's definition of "disparage.").

## B.     The "Failure to Conform" Exclusion (g) Is Inapplicable

### 1.     General Star Bears the Burden of Proving the Exclusion Applies and is Subject to No Other Reasonable Interpretation

"To negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case."[13] An insurer desiring to exclude any risk must do so in clear and unmistakable terms and a vague exclusion should not be permitted to exclude coverage.[14] Exclusionary terms are to be accorded a strict and narrow construction, and are not to be extended by interpretation or implication. Any policy exclusion must be strictly construed against the insurer, and an insurer may negate coverage only if the exclusion is stated in clear and unmistakable language demonstrating that it applies in the particular case and is subject to no other reasonable interpretation.[15] In other words, when the issue is the appropriate construction or interpretation of the terms of an exclusionary clause, the insurer must establish that its construction or interpretation of the clause is the only proper construction.[16] The burden of satisfying this test is on the insurer.[17] If the insurer fails to submit extrinsic evidence that resolves the ambiguity in its favor, the proper interpretation is a matter of law and the ambiguity is resolved against the drafter of the contract, the insurer.[18] General Star has submitted no extrinsic evidence concerning its asserted exclusion.

### 2.     The Failure to Conform Exclusion Does Not Apply

The failure to conform exclusion provides that there is no coverage for "'Personal and advertising injury' arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your 'advertisement.'" **[SMF ¶8]** The exclusion

---

[13]*Cont'l Cas. Co. v. Rapid-Am. Corp.*, 80 N.Y.2d 640, 652 (1993); *see also RJC Realty Holding Corp. v. Republic Franklin Ins. Co.*, 2 N.Y.3d 158, 165 (2004).

[14]*Sincoff v. Liberty Mut. Fire Ins. Co.,* 11 N.Y.2d 386, 391 (1962).

[15]*Cone v. Nationwide Mut. Fire Ins. Co.*, 75 N.Y.2d 747, 749 (1989).

[16]*Nussbaum Diamonds, LLC v. Hanover Ins. Co.*, 64 A.D.3d 488, 491 (1st Dept. 2009).

[17]*Continental Cas. Co. v. Rapid-American Corp.*, 80 N.Y.2d 640, 654 (1993).

[18]*Kenavan v. Empire Blue Cross & Blue Shield*, 248 A.D.2d 42, 47 (1st Dept. 1998).

does not apply here because no plaintiff alleges that Craze failed to conform with any statement of quality or performance. Instead the suits allege there is an ingredient not listed on the label or advertising and that Driven Sports disparages competing products. There is no allegation that the Craze label or advertising makes a "statement of quality or performance" which the product does not meet. Instead allegations are made that something more should be on the label (which Driven Sports strongly denies) and that Driven Sports denigrates competing products. So there is no failure to conform even alleged and certainly nothing of the sort proven.

General Star fails to distinguish between allegations that Craze contains some undisclosed ingredient and the allegations of harm due to disparagement. General Star focuses on arguing that Driven Sports made false representations about its own products when it allegedly omitted something from its label. The *Craze suits* do not allege injury arising out of the failure of *Craze* to conform to a "statement of quality or performance." But the suits do allege damages to competitors because of Driven Sports' negative comparisons of competing products. The failure to conform exclusion cannot apply here because the disparagement injury does not arise from the failure of the product to conform to its label. It arises from advertisements which expressly and implicitly derogate competitors' products. The injury is not a result of the failure of *Craze* to conform to its label; it is a result of the allegedly false statements against competitors. For example, Driven Sports' published statements that Craze tastes good while competing products taste "awful." The harm is from the claim that the other product tastes awful, not because Craze does not taste as good as it claims. The exclusion applies to harm where goods fail to conform to statements of quality or performance, not to harm from advertising that derogates competitors.

This case is comparable to *Safety Dynamics* which found disparagement where there was "[a] derogatory comparison of one thing with another," implicated by Safety Dynamics' false claims about its own product [that] had the result of misleading consumers because it made Safety Dynamics' product look better versus ShotSpotter's."[19] The exclusion was no bar. *Id.*

---

[19] *Safety Dynamics, Inc. v. Gen. Star Indem. Co.*, 475 F. Appx. 213, 214 (9th Cir. (Az.) 2012).

The non-conforming goods exception does not apply because ShotSpotter's injury claimed in the underlying action does not *arise out of* the failure of Safety Dynamics's product to conform to its advertisements. Rather, it is a competitive injury. This exception "is directed to the failure of goods, not the failure of advertising."

In *Milne Jewelry,* the insured argued that the term quality does not relate to a "characteristic" such as Native American authenticity, but relates rather to the fitness of the product.[20] Here, "quality or performance" does not include a statement that the product has the characteristic of including certain ingredients. *Milne Jewelry* held that the term "quality" was reasonably susceptible to more than one meaning, and therefore, must be construed against the insurer. *Id.* at *9-10. In *Pennfield Oil*, Alpharma alleged that Pennfield made false assertions on labeling and in trade publications that it had FDA approval for multiple uses of its product which resulted in lost sales, profits and good will.[21] The Court concluded, *id* at *25-26, that the failure to conform exclusion did not apply because the alleged injury arose from implicit disparagement in advertising, not from the failure of the product to conform to the advertising:

> This provision purports to exclude false claims about the insured's own products. However, the injuries excluded … are limited to those caused by a claim that the company's product did not conform with its advertised quality or performance. Alpharma's complaint does not allege such a claim. Alpharma's alleged injury is due to Pennfield's implicit disparagement of Alpharma's product and practices. Alpharma's injury - lost sales, profits and goodwill - would not be remedied if Pennfield's products were to conform to the allegedly false advertised quality. Accordingly, the court finds the failure to conform exclusion does not apply.

Similarly the injuries to Driven Sports' competitors would not be remedied if Driven Sports' products conformed with allegedly false labeling. There were still express negative comparisons between Driven Sports' products and competitors' products in addition to the disparagement implicit in Driven Sports' claims.

*Infor Global Solutions* also recognized the distinction between an allegation that the product did not conform and an allegation of harm to a competitor from disparagement.[22] *Infor* distinguished *Total Call* (cited by General Star and similar to the *Dollar Phone* ruling) stating:

---

[20] *Jewelers Mut. Ins. v. Milne Jewelry*, No.2:06-CV-243, 2006 U.S. Dist. LEXIS 90551, at *9 (D. UT Dec. 14, 2006).

[21] *Pennfield Oil Co. v. Am. Feed Indus. Ins. Co. Risk Retention Group, Inc.*, No. 8:05-CV-315, 2007 U.S. Dist. LEXIS 21456, at *4 (D. Neb. Mar. 12, 2007).

[22] *Infor Global Solutions (Mich.) v. St. Paul Fire & Marine Ins.*, 686 F. Supp. 2d 1005, 1007-08 (N.D. Cal. 2010).

[T]he exclusion does not apply here because "[t]his case . . . is not related to the performance of Plaintiff's products. Rather, this action is based on alleged trade libel committed by Plaintiff, with respect to negative comparisons Plaintiff made about competitors vis-a-vis Plaintiff's products. **It is irrelevant whether Plaintiff's products actually possessed the attributes advertised by Plaintiff**."…. In contrast to *Total Call*, **the Court here found clearly implied disparagement, which removed the case from the purview of the nonconformity exception.** *Id.* (emphasis added).[23]

*Tria Beauty* followed *Infor* recognizing that "in the implied disparagement context, the harm suffered by the third party competitor does not arise out of the failure of the insured's products to conform with their advertised quality. Rather, the harm arises out of 'negative comparisons Plaintiff made about competitors vis-a-vis Plaintiff's products. It is irrelevant whether Plaintiff's products actually possessed the attributes advertised by Plaintiff.'"[24]

*Natural Organic's* analysis of the breach of contract exclusion[25] and *CGS'* analysis of the knowing violation exclusion[26] are comparable and highlight the inapplicability of the failure to conform exclusion as it was not even raised there by the insurers or the courts.

### 3. Application of the Failure to Conform Exclusion Is Not Proven

General Star cites numerous cases interpreting the exclusion, but they are not applicable to the facts of the present case. In *Dollar Phone*, the court applied a "failure to conform" exclusion but only because the harm to plaintiff's reputation was "premised **entirely** on the inaccuracy of [the insured's] promises.[27] In *Dollar Phone*, there were no allegations beyond a misrepresentation about the insured's own product (the number of minutes). Here each complaint

---

[23]*See also, Edwards Theatres, Inc. v. United National Ins. Co.*, 126 Fed. Appx. 831, 833 (9th Cir. (Cal.) 2005) ("IMAX had a potential cause of action simply by establishing that Edwards exploited its identity and goodwill in its advertisements; [T]he quality of goods that Edwards was selling was irrelevant to [claims for trademark infringement and use of another's advertising idea.]").

[24]*Tria Beauty, Inc. v. Nat'l Fire Ins. Co.*, No. C 12-05465, 2013 U.S. Dist. LEXIS 71499, at *20-21 (N.D. Cal. May 20, 2013) ("[T]he harm did not proceed from whether [the insured's] products were indeed superior. It arose out of the implication from [the insured's] advertising that [a competitor's] products were inferior.").

[25]*Natural Organics*, 102 A.D.3d at 959 ("the press release was allegedly false and disparaging to NPN's products without regard to whether NOI breached its agreement with NPN. . . [T]he product disparagement claim does not necessarily arise out of NOI's alleged breach of contract[.]").

[26]*CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71 (2d Cir. (N.Y.) 2013) (The court found the "knowing violation" exclusion inapplicable "as at least one of the claims in the Underlying Action did not require intent, Charter was required to defend the entire action." (citations omitted)).

[27]*Dollar Phone,* 2012 U.S. Dist. LEXIS 45591, at *30.

alleges harm premised on Driven Sports' express and implied statements that competitor's products were significantly inferior to Craze.

*Dollar Phone* explained this distinction by comparison to the ruling in *E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co*. explaining that:

> In *E.piphany* the court found that the "failure to conform" exclusion did not apply because the advertising injury arose from negative comparisons made by the insured about its competitors in its advertisements. 590 F. Supp. 2d at 1248 n.5. Here, on the other hand, IDT's claims are not based on such comparisons. Rather, they are based on Dollar Phone's products' failure to perform as advertised.[28]

The *Craze suits* are much more akin to *E.piphany* in that the injury also arose from negative comparisons made by the insured about its competitors and their products.

General Star acknowledges this dichotomy in its citation to *PCB Piezotronics*. That court upheld an insurer's duty to defend stating that the failure to conform exclusion arguably applies to the fourth counterclaim to the extent that it alleges that [the insured's] advertisement misrepresented the nature, characteristics and qualities of [the insured's] products, but it is **wholly inapplicable** to the counterclaim's allegation that the advertisement was equally misleading with respect to [a competitor's] products."[29] The *Craze suits* allege that competitors were harmed by Driven Sports' advertisements. Therefore, the exclusion does not apply.

The ruling in *R.C. Bigelow*[30] was similar. That court held that while the duty to defend was not triggered by allegations relating to false advertising about the insured's own products, the duty to defend *did* arise under allegations of other wrongdoing including trade dress infringement. Here, the other allegations include disparagement of competitors' products.

General Star's citation to *Buzz Off*[31] is equally unavailing. That North Carolina case simply found that the allegations of the complaint all related to statements by the insured about

---

[28]*Id.* at *31 fn.3 citing *E.Piphany,* 590 F. Supp. at 1248 n.5.

[29]*PCB Piezotronics, Inc. v. Kistler Instrument Corp.*, No. 96-CV-0512E, 1997 U.S. Dist. LEXIS 20783, at *10 (W.D.N.Y. Dec. 30, 1997).

[30]*R.C. Bigelow, Inc. v. Liberty Mut. Ins. Co.*, 287 F.3d 242, 246 (2d Cir. 2002).

[31]*Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 692 S.E.2d 605, 613 (2010).

the quality of the insured's own products and were not based on allegations about competitors' products. *Buzz Off* is distinguishable on its facts because in the present case the complaints allege and refer to disparaging statements about competitors' products.

General Star also cites in a footnote cases from other jurisdictions. **[Dkt. 19-1:22-23 fn. 5]** These cases only involved allegations of harm from the performance failure of the insured's product itself, not harm to a competitor from advertising.[32] The distinguishing factor here are the claims of disparagement supported by referenced extrinsic evidence showing express disparaging statements about competitors' products. The complaints allege that Driven Sports' advertisements implied the inferiority of its competitors' products. Harm arises from the disparaging advertisements, not from the failure of the products to perform or conform to advertising claims. General Star has not shown that the exclusion applies.

## II. GENERAL STAR HAS NO RIGHT TO RECOUP ITS DEFENSE EXPENSES

### A. General Star's Admission That It Had No Recoupment Right

When it agreed to defend Driven Sports, General Star requested the insured sign an "Interim Non-Waiver And Defense Funding Agreement." **[Dkt. 24-2, 24-3, 24-4, & 24-5:11-14]** That rejected agreement would commit Driven Sports to "the repayment of Defense Expenses, Supplementary Payments or settlements or judgments paid to or on behalf of the Insured by the Insurer in connection with the Craze Action in the event it is finally determined that such amounts are not covered under the policy." **[Dkt. 24-2, 24-3, 24-4, & 24-5:13:¶10]**

That request admitted that General Star had no existing right to recoupment, otherwise it

---

[32] *Jarrow Formulas, Inc. v. Steadfast Ins. Co.*, No. 2:10-CV-801-JST, 2011 U.S. Dist. LEXIS 40200, at *19 (C.D. Cal. Apr. 12, 2011) ("[A]t most, the Underlying Action alleged that Plaintiff falsely advertised the benefits of JarroSil by falsely suggesting that JarroSil would perform as shown in the study.");

*Total Call Internat. Inc. v. Peerless Ins. Co.*, 181 Cal. App. 4th 161, 171 (2010) (Like *Dollar Phone*, allegations related only to number of minutes on a calling card and the price of insured's product);

*Skylink Techs., Inc. v. Assurance Co. of Am.*, 400 F.3d 982, 984 (7th Cir. 2005) (the manufacturer's claims relied entirely on the allegation that the insured's devices "[did] not live up to the promise of compatibility");

*N.H. Ins. Co. v. Power-O-Peat*, 907 F.2d 58, 58 (8th Cir. 1990) (issue was duty to <u>indemnify</u> applying a different exclusion for "incorrect description or mistake in advertised price of good[s]…advertised." That complaint essentially alleged that Power-O-Peat had mislabeled its composted cow and sheep manure products.).

would not need a new agreement granting that right. General Star characterized the proposed Agreement as providing "that Driven Sports would agree to repay any defense expenses in the event that it is finally determined that such amounts are not covered under the Policy." **[Dkt. 24-7:1]** General Star was seeking rights it did not already have, contradicting its arguments now.

**B.** **New York State Courts Have Never Recognized A Right to Reimbursement**

New York State courts have never agreed that an insurer has any right to reimbursement of previously paid defense expenses if a duty to defend has been determined not to exist. Although a handful of states have allowed a right to seek reimbursement when it is not contained in the policy language, the majority of states to consider the issue have rejected any such right. The recent trend is to deny any such extra-contractual right. General Star incorrectly argues about what it calls the "majority" rule and inappropriately relies on some inapposite trial court decisions. But the New York Court of Appeals is unlikely to recognize a reimbursement right that is not contained in the insurer's policy.

In a diversity case, where a state court has not decided a question of law, this Court is obligated to predict how the New York Court of Appeals would rule on this question.[33]

**C.** **The New York Court of Appeals Would Not Likely Allow Reimbursement**

No New York appellate case suggests that the New York Court of Appeals would recognize an insurer's right to reimbursement of defense expenses where that right is not contained in the policy. Recent decisions from the majority of states to consider this concept have emphatically ruled against an insurer's right to reimbursement unless it was specifically reserved **in the policy**; an insurer cannot "reserve rights" via a letter that are not present in the policy or recognized by state law. Pennsylvania recently rejected such a reimbursement right because "it would amount **to a retroactive erosion of the broad duty to defend.**"[34] New York

---

[33]*Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994) ("Where the substantive law of the forum state is uncertain or ambiguous, the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity.").

[34]*Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 539 (Pa. 2010).

similarly imposes on insurers an "exceedingly broad duty to defend."[35]

In *Midwest Sporting Goods*, the Illinois Supreme Court ruled against a right of reimbursement after surveying every previous relevant decision.[36] The court could not condone the insurer unilaterally modifying the insurance contract through a reservation of rights. *Id.*

The court agreed that if the insurer wished to retain its right to seek reimbursement, that right could be included in the policy but the insurer could not later amend the policy in a reservation of rights letter. *Id.* at 164. A "reservation of rights letter could retain only those defenses that [the insurer] had under its policy… Consequently, [the insurer's] attempt to expand its reservation of rights to include the right to reimbursement must fail. *Id.* An implied agreement effectively places the insured in the position of making a Hobson's choice between accepting the insurer's additional conditions on its defense or losing its right to a defense from the insurer. *Id.*

In defending its insured, the carrier is also protecting its own interests, so the insured is not being unjustly enriched.[37] Moreover, disallowing reimbursement was consistent with law requiring an insurer to defend the entire action even if only one claim was potentially covered and not allowing the insurer to modify the contractual duty to defend by reserving a right to allocate its payments between potentially covered and non-covered claims. *Id.* at 162-63.

"The insurer's duty to defend the entire action is triggered even if only one claim is potentially covered by the insurance policy."[38] Allowing an insurer to unilaterally reserve a right to reimbursement in a letter when the policy does not specifically grant the insurer that right contravenes New York's requirement that an insurer to defend the entire case.

The Washington Supreme Court most recently ruled on this question. It concluded that an

---

[35]*Automobile Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006).

[36]*Gen. Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.*, 215 Ill. 2d 146, 162-63 (Ill. 2005).

[37]*Id.* at 163 ("When an insurer tenders a defense or pays defense costs pursuant to a reservation of rights, the insurer is protecting itself at least as much as it is protecting its insured. Thus, we cannot say that an insured is unjustly enriched when its insurer tenders a defense in order to protect its own interests, even if it is later determined that the insurer did not owe a defense.").

[38]*Bridge Metal Indus., L.L.C. v. Travelers Indem. Co.*, 812 F. Supp. 2d 527, 535 (S.D.N.Y. 2011).

insurer has no right to reimbursement if it is not provided for in the contract.[39] After carefully surveying cases throughout the country, *Immunex* held such a right "would serve solely to protect [*the insurer*] from claims of breach [of contract] while placing the full risk of a determination of noncoverage on its insured" and "allow the insurer to impose a condition on its defense that was not bargained for." *Id.* The court pointed out that "forcing an insured to make this 'Hobson's choice,' " choosing between seeking a defense under the policy, and running the risk of having to pay its insurer for the defense if it is subsequently determined that no duty to defend existed, or giving up all meritorious claims that a duty to defend exists "is inconsistent with [law requiring] an insurer to give its insured's interests equal consideration." *Id.* at 695. This is consistent with New York law that an insurer must give the insured's interests at least equal consideration to avoid bad faith.[40]

### D. The Majority of Jurisdictions Do Not Support a Right to Reimbursement

A 2011 study published by the ABA, the majority and modern trend is to reject an insurer's right to reimbursement.[41] In 2011 only *five* state courts had recognized a right to reimbursement while *seven* state courts had expressly rejected it. In 2013 Washington joined the majority of states disallowing reimbursement to make a total of *eight* states. No state court has recognized an insurer's reimbursement right in the last eleven years. *Six* of the *eight* decisions rejecting reimbursement were issued after Connecticut's 2003 ruling for insurers. The current trend is reject a right to reimbursement. The trend in federal courts is the same. As of the 2011 survey, only *six* federal courts had predicted that their state courts would allow reimbursement, while *twelve* federal courts had predicted their states would not. New York is likely to follow the

---

[39]*Nat'l Sur. Corp. v. Immunex Corp.*, 297 P.3d 688, 693-94 (Wash. 2013) ("Disallowing recoupment in this instance does not leave insurers without options to protect their interests. . . . National Surety *did* choose to defend Immunex, following the reservation of rights approach our precedent allows. It cannot claim the benefits of doing so and simultaneously avoid the costs.").

[40]*Young v. Am. Cas. Co.*, 416 F.2d 906, 910 (2d Cir. 1969); *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000) ("The insurer acts in good faith when it gives equal consideration to its insured's interest in avoiding liability in excess of the policy limit as it does to its own interests when considering plaintiff's demand to settle a lawsuit.").
[41]*2011 ABA Insurance Coverage Litigation Committee CLE Seminar*, March 3-5, 2011: Insurer Reimbursement from a Policyholder. Located online at: https://apps.americanbar.org/litigation/committees/insurance/docs/2011-cle-materials/11-ReimbursementPaymentClaims/11aReversingCourseCanInsurer.pdf.

majority rule because it is consistent with New York's views on insurer obligations.

General Star inaccurately claims that most jurisdictions allow insurer reimbursement, citing *Hillerich* a Sixth Circuit opinion predicting Kentucky law.[42] **[Dkt. 19-1:25]** *Hillerich* relies on *SST Fitness*[43] a 2002 decision for this supposed fact. General Star also cites *NRI Construction*[44] but that trial court relied on unconfirmed erroneous statements from prior cases.

## E.    General Star's Cases Do Not Establish New York Law

General Star's argument for recoupment is based on cases that did not consider a general right to reimbursement or recoupment of defense expenses under New York law. The cited cases either relied on California law, without any conflict of laws analysis, or relied on cases interpreting policies containing specific provisions for reimbursement. None of these cases is applicable here and none permit an insurer to send a letter after a suit is being defended "reserving a right" to reimbursement or recoupment that does not exist in the policy it sold. General Star had no such "right" to reserve here. New York would likely follow the modern majority rule denying reimbursement rights when the insurer does not include reimbursement in the insurance policy. Such policies are uncommon as less attractive for marketing.

General Star's reliance on *Gotham Ins. v. GLNX*[45] does not purport to establish New York law. This unpublished case more than two decades old did not discuss what state's law applied and only cited a California case as authority for reimbursement after no duty to defend was established. The *GLNX* court never suggests any reason that the New York Court of Appeals would recognize a right to reimbursement. A single citation to a California district court case with no analysis of the impact of its ruling or consideration for what the New York Court of Appeals would hold is not persuasive in contrast to the considerable analysis conducted by courts in other jurisdictions on this issue over the past 20 years.

---

[42]*Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co.*, 598 F.3d 257, 267 (6th Cir. 2010).

[43]*United Nat'l Ins. Co. v. SST Fitness Corp.*, 309 F.3d 914, 917 (6th Cir. 2002).

[44]*Ill. Union Ins. Co. v. NRI Constr.*, 846 F. Supp. 2d 1366, 1374 (N.D. Ga. 2012).

[45]*Gotham Ins. Co. v. GLNX, Inc.* No. 92 Civ. 6415, 1993 U.S. Dist. LEXIS 10891 (S.D.N.Y. Aug. 6, 1993).

General Star also relies upon *U.S. Specialty Ins. v. Liberty Partners*[46] which cited *Gotham Ins. v. GLNX* in suggesting that reimbursement of defense expenses for a California lawsuit *might* be appropriate (although that issue was not decided). This comment was made without a conflict of laws analysis in an order denying a motion to transfer the suit to the Central District of California. The court did reference a New York case, *Axis Reinsurance Co. v. Bennett*, No. 07 Civ. 7924, 2008 U.S. Dist. LEXIS 53921, at \*6 (S.D.N.Y. June 26, 2008). But the *Axis* case discussed recoupment specifically provided for in the insurance policy itself: "[T]he Insureds agree to repay such non-covered Defense Costs to the Insurer." The *Liberty Partners* court also cited *Nat'l Union Fire Ins. Co. v. Ambassador Group., Inc.,* 157 A.D.2d 293, 299 (1990) another case permitting recoupment. But the *Ambassador Group* case also concerned a policy specifically permitting recoupment: ("[U]nder certain policies, directors and officers liability insurers are required to make contemporaneous interim advances of defense expenses where coverage is disputed, subject to recoupment in the event it is ultimately determined no coverage was afforded.") Neither *Liberty Partners* nor cases it relied upon discussed whether the New York Court of Appeals would permit reimbursement when the policy did not provide for it.

General Star relies on *Max Specialty Ins. Co. v. WSG Investors, LLC*, NO. 09-CV-5237, 2012 U.S. Dist. LEXIS 108601, at \*25 (E.D.N.Y. Apr. 20, 2012) in which the Magistrate Judge essentially quoted from *Liberty Partners,* citing *GLNX, Axis*, and *Ambassador Grp* in favor of recoupment after the insured did not oppose that relief. But the decision did not establish New York law on recoupment in a case where the policy did *not* specifically provide for it, as is the case here. *Trustees of Princeton,*[47] an unpublished case cited by General Star, also concerns a D&O policy and quotes language from *Ambassador Group* both of which included a recoupment right **in the contract.** Similarly, *Kozlowski*[48] is another D&O policy case based on the ruling in

---

[46]*U.S. Specialty Ins. v. Liberty Partners*, No. 11 Civ. 3736, 2011 U.S. Dist. LEXIS 128948 (S.D.N.Y. Nov. 7, 2011).

[47]*Trustees of Princeton Univ. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 15 Misc. 3d 1118(A) (N.Y. S.Ct. 2007).

[48]*Fed. Ins. Co. v. Kozlowski*, 18 A.D.3d 33, 42 (1st Dept. 2005).

*Ambassador Group. Dupree*[49] is a D&O policy case that cited *Kozlowski*. No state court case cited by General Star apply to its attempt to reserve a right to reimbursement in a reservation of rights letter under a general liability policy that does not specifically provide for that right.

Finally General Star cites *XL Specialty Ins. Co. v. Level Global Investors, L.P.*, 874 F. Supp. 2d 263, 282 (S.D.N.Y. 2012) as if it were a generally applicable recoupment decision based on a theory of unjust enrichment. In fact it is just another case about a D&O policy with reimbursement provisions in the policy. It relies on the same cases (*Kozlowski, Ambassador Group, Axis,* and *Trustees of Princeton*) that concern specialized D&O policies where the insurer has no duty to defend but instead an obligation to advance defense expenses combined with a right to recoupment in the policy. The cases are therefore inapposite.

None of the cases cited by *General Star* considered whether the New York Court of Appeals would recognize a right to reimbursement to insurers that chose not to include such a right in its policies but who preferred to inform its insured of that intention only after a claim was made. No case it cited included analysis of this issue. General Star should not be allowed to unilaterally amend its policy and subvert its contractual duty to defend by after a claim is made.

## III.    THE GENERAL STAR POLICY IS NOT SELF-LIQUIDATING

### A.    The Policy Language Is Ambiguous

Endorsement 8 to the Policy entitled "Supplementary Payments-Coverages A And B To Be Included Within Limits of Insurance" has no summary of changes and nowhere simply or clearly informs policyholders that General Star is reducing policy benefits or that defense expenses are to be deducted from the policy limits. **[SMF ¶14]** The policy language is ambiguous at best as to whether attorney's fees and costs are included within the "Supplementary Payments" section. A reasonable interpretation is that they are not. New York aggressively interprets ambiguous insurance policy language in favor of the insured and against the insurer.[50] If General Star wanted its policyholders to know that it was selling "defense within

---

[49] *Dupree v. Scottsdale Ins. Co.*, 96 A.D.3d 546, 546 (1st Dept. 2012).

[50] *242-44 E. 77th St., LLC v. Greater N.Y. Mut. Ins. Co.*, 31 A.D.3d 100, 105 (1st Dept. 2006), *cited by Matter of E.*

limits" insurance, it could have said so plainly.[51] Endorsement 8 is ambiguous obfuscation. A reasonable insured would not understand or expect that defense expenses reduce policy limits.[52]

General Star claims that the Policy is self-liquidating because the Policy states that "Supplementary Payments" reduce the limit of liability and includes "all expenses" incurred in the defense of suits for covered injuries. It claims that the phrase "all expenses" used in the "Supplementary Payments" provision plainly includes all defense costs. But that is not clearly explained anywhere in the Policy or in the endorsement. **[Dkt. 19-1:27]**

Driven Sports does not dispute that endorsement 8 provides that Supplementary Payments will reduce the limits of the policy. However, it does dispute that attorneys' fees and costs are included in the definition of "all expenses we incur" in the Supplementary Payments section in the original policy or in endorsement 8. The claimed inclusion of defense costs is never clearly spelled out as being included within "expenses."

### B. Defense Costs Are Not Included In Supplementary Payments

Supplementary Payments ordinarily refers to smaller ancillary expenses incurred in connection with the main policy benefits which are to pay claims and to defend suits. "Supplement" is "1.a: something that completes or makes an addition."[53] A *Supplementary* Payment would not include the primary Policy benefits, i.e. defense and indemnity of claims. Supplementary Payments must logically be *supplementary* (in addition to) to the principal policy

---

[51] *st St. Crane Collapse Litig.*, 103 A.D.3d 401 (1st Dept. 2013) ("Where an insurance policy reasonably lends itself to two conflicting interpretations, its terms are ambiguous and must be construed in favor of the insured and against the insurer, the drafter of the policy language (*Matter of Mostow v. State Farm Ins. Cos.*, 88 N.Y.2d 321, 326 (1996); *see Breed v. Insurance Co. of N. Am.*, 46 N.Y.2d 351, 357 (1978)). This rule of construction is especially true where, as here, the language at issue appears in an exclusion limiting the insurer's exposure. '[P]olicy exclusions are given a strict and narrow construction, with any ambiguity resolved against the insurer' (*Belt Painting Corp. v. TIG Ins. Co.*, 100 N.Y.2d 377, 383 (2003); *see Moneta Dev. Corp. v. Generali Ins. Co. of Trieste & Venice*, 212 A.D.2d 428 (1995)).").

[51] *New York Cent. Mut. Fire Ins. Co. v. Sweet*, 16 A.D.3d 1013, 1014 (3d Dept. 2005) ("While unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, ambiguous terms which may be interpreted in more than one manner must be resolved in favor of the insured.").

[52] *Belt Painting*, 100 N.Y.2d at 383 ("We read an insurance policy in light of 'common speech' and the reasonable expectations of a businessperson.").

[53] "Supplement." *Merriam-Webster.com*. Merriam-Webster, n.d. Web. 6 Aug. 2014. <http://www.merriam-webster.com/dictionary/supplement>.

benefits. Otherwise there would be nothing for these payments to supplement.[54] The "Supplement" cannot logically swallow the Principal policy coverage, like a tail wagging a dog.

The defense benefit is provided in the "Coverage B Personal and Advertising Injury" insuring agreement of the Policy: the insurer's "right and duty to defend." **[SMF ¶7]** Endorsement 8 says that the duty to defend ends when the limits of insurance are used up in the payment of judgments, settlements, or Supplementary Payments. **[SMF ¶17]** Nowhere does the Policy say that payments made under General Star's "right and duty to defend" are also part of the Supplementary Payments. Duty to defend is independent of Supplementary Payments.

General Star's request that Driven Sports sign the "Interim Non-Waiver And Defense Funding Agreement" to repay "Defense Expenses, Supplementary Payments or settlements or judgments …" **[Dkt. 24-2, 24-3, 24-4, & 24-5:13:¶10]** admitted that "Defense Expenses" and "Supplementary Payments" are separate items. If "Defense Expenses" were included within "Supplementary Payments" there would be no need to identify these items separately. General Star also treated defense expenses separately in its rejected Agreement, providing "that defense expenses would erode the limits of liability." **[Dkt. 24-7:1]** General Star was seeking to establish rights under the Policy that were ambiguous or did not previously exist.

Interpreting the Policy so that coverage for the defense within the insuring agreement and then as a Supplemental Payments would be superfluous. New York strives not to interpret insurance contracts in such a way as to render certain portions surplusage.[55] "This principle seeks simply to enforce contracts in accordance with the probable intention of the contracting parties.

---

[54] Six of the seven supplementary payments (b - g) are for discrete, specific, miscellaneous expense items that bear no relationship to Admiral's defense counsel's fees for the underlying suit, i.e., bail and other bonds, the insured's loss of earnings, the plaintiff's costs taxed against the insured in the underlying suit, and pre- and post-judgment interest. The remaining supplementary payment category a – "[a]ll expenses we incur" – must be interpreted in this context. *See Pasco v. State Auto. Mut. Ins. Co.*, No. 99AP-430, 1999 WL 1221633 (Ohio Ct. App. Dec. 21, 1999).

[55] *Doe v. CIGNA Life Ins. Co.*, 304 F. Supp. 2d 477, 499-500 (W.D.N.Y. 2003) (Inferring that the terms "disabled" and "partially disabled" do not have the same meaning in an insurance policy, "[o]therwise, the two forms of coverage within the Policy would be basically similar in scope, rendering one or the other surplusage, contrary to accepted principles of contractual construction. 'Courts, in interpreting insurance policies, should strive to give 'meaning … to every sentence, clause, and word of a contract of insurance.'' *Northville Indus. Corp. v. National Union Fire Ins.*, 657 N.Y.S.2d 564, 567-68 (1997) quoting 69 N.Y. Jur. 2d, Insurance § 701, at 91-92 and citing cases (underlining added).").

Where it seems unlikely that a clause or term would have been written if it was to have no consequences, one examines to see whether another interpretation might better serve the apparent intentions of the contracting parties."[56] There would be no purpose served by including defense expenses within Supplementary Payments where payment of defense expenses is already provided in the main insuring agreement. General Star's interpretation at least presents an ambiguity in the Policy which must be resolved against the insurer, as drafter of the agreement.[57]

*Flowers v. Max Specialty Ins.,* the court found an endorsement limiting coverage for assault and battery and providing that supplemental payments reduced limits was ambiguous because it did not clearly define "all expenses we incur" to include attorneys fees pursuant to its duty to defend.[58] The court stated:

> The Supplementary Payments portion of the policy does not expressly reference attorney fees incurred as a result of Max Specialty's duty to defend and does not contain any language regarding the termination of its duty to defend. The Supplementary Payments language does state that Max Specialty will pay "All expenses we incur", but it does not define expenses to include the attorney fees paid to an attorney pursuant to its duty to defend a suit as established in SECTION I - COVERAGES.

A "purported monetary limitation on [the] duty to defend was not set out in clear, direct, unambiguous language. Limitations on [the] duty to defend must be so expressed." *Id.* at 22.

Driven Sports' motion for partial summary judgment extensively discussed the rulings in *In re East 51st Street Crane Collapse Litigation* and *Ill. Union Ins. Co. v. N. County Ob-Gyn Med. Group, Inc.* which both held that similar provisions were ambiguous and so did not include defense costs. **[Dkt. 21:27-29 & 31-32]** The court in *East 51st Street* held that the Supplementary Payment provision containing the same "all expenses we incur" language was ambiguous "as to whether 'expenses' includes defense costs."[59] General Star attempts to

---

[56]*Allstate Ins. v. St. Paul Fire & Marine Ins.*, 83 Civ. 3198, 1984 U.S. Dist. LEXIS 24944, at *7 (S.D.N.Y. 1984).

[57]*Westview Assocs. v. Guar. Nat'l Ins. Co.*, 95 N.Y.2d 334, 339 (2000) (refusing to interpret an umbrella policy to include a provision incorporating the primary policy's exclusions because doing so would render exclusions present in the umbrella policy surplusage).

[58]*Flowers v. Max Specialty Ins. Co.*, No. 13-0262, 2014 W. Va. LEXIS 630, at *19-20 (W. Va. June 4, 2014).

[59]*E. 51st St. Crane*, 103 A.D.3d at 403; *confirmed on reconsideration* 114 A.D.3d 611, 611 (1st Dept. 2014).

distinguish *East 51st Street* in its MSJ **[Dkt. 19-1:29]** by arguing that the policy provided that Supplementary Payments reduce the limits of liability, but also that the insurer's duty to defend ended only upon exhaustion of the policy limits through payment of judgments or settlements. But General Star fails to acknowledge that the *East 51st Street* court found that the Supplementary Payment provision was ambiguous "as to whether 'expenses' includes defense costs." The court held the ambiguity was due to a conflict between those two provisions. But whether "expenses" includes defense costs is not dependent on whether Supplemental Payments reduce policy limits or ends the duty to defend. In *East 51st Street* that conflict created an ambiguity so great that no other analysis was necessary. The court did not address any other potential ambiguities. Here, the endorsement amended the policy by saying that Supplemental Payments reduced policy limits, but it does not explain that those Supplemental Payments include defense costs. So it is still ambiguous.

In *Ill Union*, the court held the policy was ambiguous because it didn't specifically explain that defense expenses were included in the definition of a 'loss' that would reduce policy limits even though it did include "legal costs, charges, fees and expenses incurred by any of the Insureds in defending Claims."[60] If General Star had desired to tell policyholders that it would include attorney's fees and costs within the Supplemental Payments definition of "expenses," it could have done so. But it did not, showing that its intention was otherwise.

General Star defines the term "all" to mean "all." But it does not define the more important term, "expenses." The question here is whether attorney's fees are considered an "expense" under the Supplemental Payments provision of the policy or a part of the principal policy benefits of providing a defense to the insured. Within the phrase "all expenses we incur" as "Supplemental Payments," it is not clear what expenses are referenced. Many small expenses are detailed but defense costs are conspicuously absent. That renders the policy ambiguous.

---

[60]*Ill. Union Ins. Co. v. N. County Ob-Gyn Med. Group,* No. 09cv2123-LAB, 2010 U.S. Dist. LEXIS 50095, at *9 (S.D. Cal. May 18, 2010).

## C.    The Cases Cited By General Star Do Not Support Its Position

General Star relies on cases that do not support its position that defense costs are included within Supplementary Payments. Significantly General Star cites no New York Law in support of its position. Among the unhelpful cases General Star cites in support of its argument that Supplementary Payments include defense expenses is *West Lake Academy.* In that Massachusetts case the policy contained a Supplementary Payments provision that did not reduce the limits of insurance, much like the one here.[61] The policy contained a sexual abuse endorsement with a $300,000 aggregate limit and the aggregate limit was reduced by Supplementary Payments.

The *West Lake* court held that defense costs were included within those Supplementary Payments based on its mistaken belief that excluding defense costs from the Supplementary Payments would defeat the purpose of the policy which was to obligate the insurer to defend the insureds and to pay defense costs. *Id.* at 18. The court's analysis was faulty because excluding defense costs from Supplementary Payments would not defeat the insurer's duty to provide a defense. The duty to provide a defense is provided for in the main insuring agreement of these policies, just as it is in General Star's policy. Whether or not defense costs were included in Supplementary Payments and whether or not those Supplementary Payments reduce policy limits, the obligation to provide a defense is still the insurer's duty under the Policy.

For example, the General Star policy provides in Section 1 coverage B paragraph 1.a. that "We will have the right and duty to defend the insured against any "suit" seeking those damages." **[SMF ¶7]** This duty to defend is part of the "Insuring Agreement and is not part of the Supplementary Payments. Whether or not defense costs are included as a Supplementary Payment "expense" does not alter General Star's duty to provide a defense. Because *West Lake* determined that "expenses" must include defense costs based on a misunderstanding of the coverage grant, it has no persuasive value here. The Supplementary Payments section includes ancillary expenses, not the principal policy benefit: the defense duty.

---

[61] *Nat'l Union Fire Ins. Co. v. W. Lake Acad.*, 548 F.3d 8, 17 (1st Cir. (Mass.) 2008).

In *Wiegert-Stathes*[62] the court held that an insurer did not have a duty to pay a supersedeas bond as part of its Supplementary Payments or as part of its duty to defend. It stated in dicta, because it was not an issue in the case, that the Supplementary Payments coverage "include[s] such things as retained counsel's fees and expenses, witnesses' fees, experts' fees, and many other costs that may be too varied to specifically list in a policy." *Id.* at 18. But the court cited no authority for its views. There was also no question raised about policy ambiguity. The case is not authority for uncontested dicta[63] and is inapposite here.

*Emplrs Reinsurance Corp.*[64] construed a Supplementary Payment provision in a reinsurance contract between two insurers to determine if it included declaratory judgment costs and expenses. In dicta, the court said that "Under the supplementary payments provision, [the insurer] pays defense costs on behalf of its insureds in underlying liability actions." *Id.* at 1227. This court also was not required to determine whether attorney's fees and costs for defense was included within Supplementary Payments and did not cite any authority on that issue or discuss ambiguity in policy provisions. Furthermore, it did not explain what it meant by "defense costs" and did not explain if they included attorney's fees. The case is not persuasive authority here.

In *Keenan Hopkins Schmidt & Stowell Contrs., Inc.*[65] the court interpreted the effect of an endorsement removing the insurer's duty to defend and to pay "Supplementary Payments." The Court stated in a footnote that "'Supplementary payments' are defined in the Policy as expenses incurred by Continental, or incurred by the insured at Continental's request, to assist in the investigation or defense of the claim or suit, costs taxed against an insured in a lawsuit, interest on a judgment, and other litigation-related expenditures… In other words, 'supplementary payments' are a component of defense costs, and are therefore only incurred in conjunction with

---

[62]*Wiegert-Stathes v. Am. Family Mut. Ins. Co.*, No. A-08-1041, 2009 Neb. App. LEXIS 179, at *25-26 (Neb. Ct. App. Oct. 20, 2009).

[63]*People v. Olah*, 300 N.Y. 96, 101 (1949) ("No opinion is an authority beyond the point actually decided"), citing *Dougherty v. Equitable Life Assurance Soc.*, 266 N.Y. 71, 88 (1934); *see also Kershaw v. Hosp. for Special Surgery*, 114 A.D.3d 75, 96 (1st Dept. 2013).

[64]*Emplrs Reinsurance Corp. v. Mid-Continent Cas. Co.*, 202 F. Supp. 2d 1221 (D. Kan. 2002).

[65]*Keenan Hopkins Schmidt & Stowell Contrs., v. Cont'l Cas. Co.*, 653 F. Supp. 2d 1255, 1266 n.2 (M.D. Fla. 2009).

paying the costs of defending the insured against a claim or lawsuit." *Id.* Nowhere does the court say that those expenses included attorney's fees. Instead it describes ancillary costs to "assist" in the investigation or defense, costs taxed, interest, and other litigation related expenditures. It characterizes Supplementary Payments as a "**component**" of defense costs, meaning that Supplementary Payments do not include all defense costs such as attorney's fees. Component is defined as "1. a constituent part **:** ingredient."[66] That case did not find all defense costs to be included within Supplementary Payments and thus supports Driven Sports' position.

General Star's finally cites *Admiral Ins. Co.*[67] from New York. The parties in that case stipulated that, pursuant to a self-insured retention provision, defense costs were included in the Retained Limit as expenses incurred under the Supplementary Payments provision. The court did not consider whether attorney's fees for an underlying third party litigation were included as an "expense" under a general liability Supplemental Payments provision or discuss ambiguity. A stipulation as to the definition in self-insured retention is not relevant here.

DATED: August 11, 2014                       Respectfully submitted,

| | |
|---|---|
| **THE KILLIAN FIRM, P.C.** | **GAUNTLETT & ASSOCIATES** |
| | |
| Eugene Killian, Jr., Esq.  [EK-9972] | By: /s/ David A. Gauntlett |
| Ryan Milun, Esq. [RM-1062] | David A. Gauntlett, Esq. (*pro hac vice*) |
| 14 Wall Street, 20th Floor | James A. Lowe, Esq. (*pro hac vice*) |
| New York, New York  10005 | 18400 Von Karman, Suite 300 |
| Telephone:  (212) 618-1409 | Irvine, California  92612 |
| Facsimile:  (212) 618-1705 | Telephone:  (949) 553-1010 |
| ekillian@tkfpc.com | Facsimile:  (949) 553-2050 |
| rmilun@tkfpc.com | info@gauntlettlaw.com |
| * * * AND * * * | jal@gauntlettlaw.com |
| 555 Route 1 South, Suite 430 | |
| Iselin, New Jersey  08830-3151 | |
| Telephone:  (732) 912-2100 | |
| Facsimile:  (732) 912-2101 | |

Attorneys for Defendant Driven Sports, Inc.

---

[66]"Component." *Merriam-Webster.com*.  Merriam-Webster,  n.d.  Web.  6  Aug.  2014.  <http://www.merriam-webster.com/dictionary/component>.

[67]*Admiral Ins. Co. v. Grace Indus.,* No. 06-CV-02955, 2009 U.S. Dist. LEXIS 63785 (E.D.N.Y. 2009).

## <u>CERTIFICATE OF SERVICE</u>

**I hereby certify** that on August 11, 2014, I electronically filed the foregoing document with the Clerk of this Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

/s/ David A. Gauntlett