# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GENERAL STAR INDEMNITY COMPANY, | |
| Plaintiff, | |
| v. | **Civil Action No.: 2:14-cv-03579-JFB-ARL** |
| DRIVEN SPORTS, INC., | |
| Defendant. | |

## GENERAL STAR INDEMNITY COMPANY'S OPPOSITION
## TO DRIVEN SPORTS INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Cara Tseng Duffield (admitted *pro hac vice*)
John E. Howell (admitted *pro hac vice*)
WILEY REIN LLP
1776 K Street N.W.
Washington, DC 20006
(202) 719-7000
cduffield@wileyrein.com
jhowell@wileyrein.com

Vincent J. Proto, Esq.
BUDD LARNER P.C.
150 John F. Kennedy Parkway
Short Hills, NJ 07078-2703
(973) 315-4435
vproto@buddlarner.com

*Attorneys for Plaintiff General Star
Indemnity Company*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

I.    INTRODUCTION .................................................................................................1

II.   ARGUMENT ......................................................................................................2

     A.    The Craze Actions do not seek damages for injury arising from
           publication of material that disparages any other person's or
           organization's products. .............................................................................2

          1.    The Craze Actions do not allege that Driven Sports made allegations
                specifically identifying and clearly derogating any person's products....... 3

          2.    Driven Sports cannot obtain coverage by rewriting the complaints in
                the Craze Actions. ................................................................................... 5

          3.    Driven Sports' website does not create coverage for the Craze
                Actions. ................................................................................................... 8

     B.    The Failure to Conform Exclusion precludes coverage ...............................11

     C.    Supplementary Payments include defense expenses and reduce the
           Policy's limit of liability ...........................................................................15

          1.    "Supplementary Payments" include defense expenses............................ 15

          2.    Supplementary Payments erode the Policy's limit of liability.................. 17

     D.    General Star is entitled to recoup the amounts it has paid for Driven
           Sports' defense of the Craze Actions. .........................................................19

     E.    Driven Sports is not entitled to fees in this action. .....................................22

III.  CONCLUSION ..................................................................................................22

# TABLE OF AUTHORITIES

**Federal Cases**

*Auto-Owners Insurance Co. v. Prairie Auto Group*, Inc.,
  No. 06-5065-KES, 2008 WL 2403381 (D.S.D. June 10, 2008) .............................................20

*Certain Interested Underwriters at Lloyd's, London Subscribing to
  Certificate of Insurance No. 9214 v. Halikoytakis*,
  No. 8:09-CV-1081, 2012 WL 487464 (M.D. Fla. Feb. 2, 2012) ...........................................19

*Chicago Insurance Co. v. Borsody*,
  165 F. Supp. 2d 592 (S.D.N.Y. 2001).................................................................................9, 10

*Cincinnati Insurance Co. v. Grand Pointe, LLC*,
  501 F. Supp. 2d 1145 (E.D. Tenn. 2007) ..............................................................................20

*Dash v. Chicago Insurance Co.*,
  No. Civ. A. 00-11911-DPW, 2004 WL 1932760 (D. Mass. Aug. 23, 2004) ........................20

*Dollar Phone Corp. v. St. Paul Fire & Marine Insurance Co.*,
  No. CV-09-1640, 2012 WL 1077448 (E.D.N.Y. Mar. 9, 2012), *adopted by*, 2012 WL
  1078994 (E.D.N.Y. Mar. 30, 2012), *aff'd*, 514 F. App'x 21 (2d Cir. 2013) .........3, 4, 7, 13, 14

*Electric Insurance Co. v. Marcantonis*,
  No. 09-5076, 2011 WL 883282 (D.N.J. Mar. 11, 2011) ......................................................20

*Elite Brands, Inc. v. Pennsylvania General Insurance Co.*,
  164 F. App'x 60 (2d Cir. 2006) ..............................................................................................3

*Federal Insurance Co. v. American Home Assurance Co.*,
  639 F.3d 557 (2d Cir. 2011).................................................................................................12

*First Investors Corp. v. Liberty Mutual Insurance Co.*,
  152 F.3d 162 (2d Cir. 1998)...................................................................................................8

*Illinois Union Insurance Co. v. North County Ob-Gyn Medical Group, Inc.*,
  No. 09cv2123, 2010 U.S. Dist. LEXIS 50095 (S.D. Cal. May 18, 2010) .............................16

*Illinois Union Insurance Co. v. NRI Construction, Inc.*,
  846 F. Supp. 2d 1366 (N.D. Ga. 2012) ..........................................................................19, 20

*In re Initial Public Offering Securities Litigation.*,
  241 F. Supp. 2d 281 (S.D.N.Y. 2003)...................................................................................15

*JAR Laboratories LLC v. Great American E & S Insurance Co.*,
  945 F. Supp. 2d 937 (N.D. Ill. 2013) .....................................................................................4

*Jarrow Formulas, Inc. v. Steadfast Insurance Co.*,
    No. 2:10-cv-801, 2011 WL 1399805 (C.D. Cal. Apr. 12, 2011),
    *aff'd*, 509 F. App'x 591 (9th Cir. 2013) ...................................................14

*Krueger International, Inc. v. Federal Insurance Co.*,
    647 F. Supp. 2d 1024 (E.D. Wis. 2009).............................................22

*LaSalle Bank National Ass'n v. Nomura Asset Capital Corp.*,
    424 F.3d 195 (2d Cir. 2005)...............................................................19

*Lexington Insurance Co. v. MGA Entertainment, Inc.*,
    961 F. Supp. 2d 536 (S.D.N.Y. 2013)................................................10

*Nautilus Insurance Co. v. Barfield Realty Corp.*,
    No. 11 civ. 7425 JPO, 2012 WL 4889280 (S.D.N.Y. Oct. 16, 2012)....................18

*In re Pandora Media, Inc.*,
    12 Civ. 8035 DLC, 2013 WL 5211927 (S.D.N.Y. Sept. 17, 2013)........................15

*PCB Piezotronics, Inc. v. Kistler Instrument Corp.*,
    No. 96-cv-0512E(F), 1997 WL 800874 (W.D.N.Y. Dec. 31, 1997) ......................14

*Perdue Farms, Inc. v. Travelers Casualty and Surety Co.*,
    8 F.3d 252, 258 (4th Cir. 2006) .........................................................20

*R.C. Bigelow, Inc. v. Liberty Mutual Insurance Co.*,
    287 F.3d 242 (2d Cir. 2002)...............................................................14

*Resure, Inc. v. Chemical Distributors, Inc.*,
    927 F. Supp. 190 (M.D. La. 1996).......................................................20

*Riley Stoker Corp. v. Fidelity & Guaranty Insurance Underwriters, Inc.*,
    26 F.3d 581, 589-90 (5th Cir. 1994) ...................................................20

*Rosenberg Diamond Development Corp. v. Employers Insurance. Co.*,
    144 F. App'x 122 (2d Cir. 2005) ..........................................................8

*Safety Dynamics, Inc. v. General Star Indemnity Co.*,
    475 F. App'x 213 (9th Cir. 2012) .......................................................13

*Scottsdale Insurance Co. v. Sullivan Properties, Inc.*,
    No. 04-00550, 2007 WL 2247795 (D. Haw. Aug. 2, 2007) ...................................20

*State of New York v. AMRO Realty Corp.*,
    936 F.2d 1420 (2d Cir. 1991) ...............................................................8

*Travelers Property Casualty Co. of America v. Hillerich & Bradsby Co.*,
    598 F.3d 257 (6th Cir. 2010) .............................................................20

*United National Insurance Co. v. SST Fitness Corp.*,
    309 F.3d 914 (6th Cir. 2002) ........................................................................20, 22

*Valley Forge Insurance Co. v. Health Care Managment Partners, Ltd.*,
    616 F.3d 1086 (10th Cir. 2010) .............................................................................20

*Vector Products, Inc. v. Hartford Fire Insurance Co.*,
    397 F.3d 1316 (11th Cir. 2005) ...............................................................................4

*Von Biedermann v. Echo Metrix, Inc.*,
    No. 10-cv-1805 (ADS) (WDW), 2012 WL 3260285 (E.D.N.Y. Aug. 6, 2012).....................18

*Wallis v. Centennial Insurance Co.*,
    982 F. Supp. 2d 1114 (E.D. Cal. 2013)....................................................................19

*Winklevoss Consultants, Inc. v. Federal Insurance Co.*,
    11 F. Supp. 2d 995 (N.D. Ill. 1998) ........................................................................4

**State Cases**

*Allstate Insurance Co. v. Mugavero*,
    589 N.E.2d 365 (N.Y. 1992)...............................................................................6, 7

*American & Foreign Insurance Co. v. Jerry's Sport Center, Inc.*,
    2 A.3d 526 (Pa. 2010) ...............................................................................19, 20, 21

*Atlantic Mutual Insurance Co. v. Terk Technologies Corp.*,
    763 N.Y.S.2d 56 (N.Y. App. Div. 2003) ...............................................................7, 8

*Auto-Owners Insurance Co. v. Prairie Auto Group*, Inc.,
    No. 06-5065-KES, 2008 WL 2403381 (D.S.D. June 10, 2008) ...........................................20

*Bruckner Realty, LLC v. County Oil Co.*,
    838 N.Y.S.2d 87 (N.Y. App. Div. 2007) ...............................................................20, 21

*Buss v. Superior Court*,
    65 Cal. Rptr. 2d 366 (Cal. 1997)............................................................................20

*Colony Insurance Co. v. G & E Tires & Service, Inc.*,
    777 So. 2d 1034 (Fla. Dist. Ct. App. 2000) ..............................................................20

*In re East 51st Street Crane Collapse Litigation*,
    960 N.Y.S.2d 364 (N.Y. App. Div. 2013) ...............................................................16

*Fitzpatrick v. American Honda Motor Co.*,
    575 N.E.2d 90 (N.Y. 1991)................................................................................9, 10

*Harleysville Mutual Insurance Co. v. Buzz Off Insect Shield, LLC*,
  692 S.E.2d 605 (N.C. 2010)....................................................................................14

*Hartford Insurance Co. v. Swift Distribution, Inc.*,
  326 P.3d 253 (Cal. 2014) ...................................................................................4, 9

*Hebela v. Healthcare Insurance Co.*,
  851 A.2d 75 (N.J. Super. Ct. App. Div. 2004)......................................................20

*JMZ USA, Inc. v. Lumbermens Mutual Casualty Co.*,
  828 N.Y.S.2d 385 (N.Y. App. Div. 2007) .............................................................3

*Julie Research Laboratories, Inc. v. General Resistance, Inc.*,
  268 N.Y.S.2d 187 (N.Y. App. Div. 1966) .............................................................9

*K2 Investment Group, LLC v. American Guarantee & Liability Insurance Co.*,
  22 N.Y.3d 578, *reargument denied*, 23 N.Y.3d 939 (N.Y. 2014) .........................21

*Murray Walter, Inc. v. Sarkisian Bros., Inc.*,
  589 N.Y.S.2d 613 (N.Y. App. Div. 1992) ....................................................18, 19

*National Casualty Insurance Co. v. City of Mount Vernon*,
  515 N.Y.S.2d 267 (N.Y. App. Div. 1987)..............................................................22

*Nationwide Mutual Insurance Co. v. Flagg*,
  789 A.2d 586 (Del. Super. Ct. 2001) ....................................................................20

*Natural Organics, Inc. v. OneBeacon America Insurance Co.*,
  959 N.Y.S.2d 204 (N.Y. App. Div. 2013) .............................................................4

*Northville Industries Corp. v. National Union Fire Insurance Co.*,
  679 N.E.2d 1044 (N.Y. 1997)................................................................................8

*Nucor Corp. v. Employers Insurance Co*,
  No. 10-0174, 2012 WL 6117029 (Ariz. Ct. App. Nov. 23, 2012).........................20

*Powerine Oil Co. v. Superior Court*,
  118 P.3d 589 (Cal. 2005) ......................................................................................16

*Richner Communications, Inc. v. Tower Insurance Co.*,
  898 N.Y.S.2d 615 (N.Y. App. Div. 2010) .....................................................17, 18

*Security Insurance Co. v. Lumbermens Mutual Casualty Co.*,
  826 A.2d 107 (Conn. 2003) ..................................................................................20

*Teichman v. Community Hospital*,
  7 N.Y.2d 514 (N.Y. 1996) ....................................................................................18

*Total Call International, Inc. v. Peerless Insurance Co.*,
  104 Cal. Rptr. 3d 319 (Cal. Ct. App. 2010) ............................................................14

*Travelers Casualty & Surety Co. v. Ribi ImmunoChem Research, Inc.*,
  108 P.3d 469 (Mont. 2005) ....................................................................................20

*Trustees of Princeton University v. National Union Fire Insurance Co.*,
  839 N.Y.S.2d 437, 2007 N.U. 50753(U),slip op. (N.Y. Sup. Ct. 2007),
    *aff'd*, 859 N.Y.S.2d 174 (N.Y. App. Div. 2008) ...................................................19

*U.S. Underwriters Insurance Co. v. City Club Hotel, LLC*,
  822 N.E.2d 777 (N.Y. 2004) ....................................................................................22

*Westchester Fire Insurance Co. v. MCI Communications Corp.*,
  902 N.Y.S.2d 350 (N.Y. App. Div. 2010) ..............................................................18

**Other Authorities**

1 Allan D. Windt, *Insurance Claims & Disputes*, § 4.3 (6th ed.) ............................9, 11

# I.    INTRODUCTION

In the summer of 2013, the popular press reported that the U.S. Anti-Doping Agency and other laboratories had conducted tests of Driven Sports' "Craze" nutritional supplement and detected amphetamine-like compounds in the product.[1]  In the following months, scientists and the press questioned whether these methamphetamine analogs could be derived from the natural ingredients listed on Craze's product label or whether the product in fact was spiked with illegal substances.[2]  As a result of the scandal, Driven Sports stopped selling Craze, and it was sued in numerous lawsuits for which it now seeks coverage.[3]

The Policy that General Star issued to Driven Sports does not afford coverage for the Craze Actions.  Those lawsuits allege false advertising and violations of various consumer protection statutes because Driven Sports allegedly failed to disclose that Craze contains an illegal methamphetamine analog.  The Craze Actions do not allege that Driven Sports "disparaged" the goods, products or services of any other person or organization as required by the terms of the Policy's insuring agreement.  Even if they did, the Policy's Failure to Conform

---

[1]    Alison Young, *The supplement danger zone*, USA TODAY, 1A, July 25, 2013, available as updated at http://www.usatoday.com/story/news/nation/2013/07/25/bodybuilding-supplement-designer-matt-cahill-usa-today-investigation/2568815/; s*ee also* Complaint, Nutrition Action, Exhibit 2 to the Declaration of Cara Tseng Duffield in Support of General Star's Motion for Summary Judgment ("Duffield Decl."), ECF Doc. No. 19-6, ¶ 12, quoting "recent USA Today article" about Driven Sports and its founder Matt Cahill.

[2]    Alison Young, *Sports supplement designer has history of risky products*, USA TODAY, Sept. 27, 2013, available at http://www.usatoday.com/story/news/nation/2013/07/25/bodybuilding-supplement-designer-matt-cahill-usa-today-investigation/2568815/; Alison Young, *Meth-like compound in sports supplements could be crime*,  USA TODAY, Oct. 17, 2103, available at http://www.usatoday.com/story/news/2013/10/17/meth-like-compound-in-supplements-could-draw-criminal-investigation-from-dea/3003413/; Alison Young, *Popular sports supplements contain meth-like compound*, USA TODAY, Oct. 25, 2013, available at http://www.usatoday.com/story/news/nation/2013/10/14/tests-of-supplements-craze-and-detonate-find-methamphetamine-like-compound/2968041/; Alison Young, *More tests find undisclosed compound in two supplements*, USA TODAY, Dec. 16, 2013, available at http://www.usatoday.com/story/news/nation/2013/12/16/amphetamine-like-compound-sports-supplements-craze-detonate/4041043/; Alison Young, *Makers of tainted supplements have criminal pasts*, USA TODAY, Dec. 20, 2013, available at http://www.usatoday.com/story/news/nation/2013/12/19/dietary-supplements-executives-criminal-records-spiked/4114451/.

[3]    Alison Young, *Maker of Craze suspends production of sports supplement*, USA TODAY, Oct. 16, 2013, available at http://www.usatoday.com/story/news/nation/2013/10/15/driven-sports-suspended-production-of-craze-amid-controversy/2990161/.

Exclusion would bar coverage because the plaintiffs in the Craze Actions allege they were injured when Driven Sports failed to disclose the true ingredients of Craze. Driven Sports' coverage arguments are based on attempts to ignore the sensational allegations that Craze contains meth that pervade the underlying complaints and recharacterize those pleadings as alleging that Driven Sports disparaged the taste and performance of competing products. A simple reading of the complaints in the Craze Actions belies these efforts.

In addition to a declaration of no coverage, General Star seeks declarations that it is entitled to recoup the amounts it has paid under reservation of rights for Driven Sports' defense of the Craze Actions and that any amounts not recouped reduce the Policy's limit of liability. In arguing that General Star is not entitled to reimbursement, Driven Sports ignores New York law supporting an insurer's right to obtain such recoupment and urges the Court to follow factually inapposite cases from other jurisdictions. In arguing that defense expenses do not reduce the limit of liability, Driven Sports seeks to substitute clear, prominent Policy language with its own purported subjective expectations of coverage. New York law forecloses these arguments.

Based on the unambiguous language of the Policy, complaints in the Craze Actions, and New York law, General Star respectfully requests that the Court deny Driven Sports' motion for summary judgment and enter judgment for General Star.

## II. ARGUMENT

### A. The Craze Actions do not seek damages for injury arising from publication of material that disparages any other person's or organization's products.

General Star and Driven Sports agree that coverage for the Craze Actions in the first instance turns on whether those actions implicate "injury . . . arising out of [the offense of] [o]ral or written publication, in any manner, of material that . . . disparages a person's or organization's goods, products or services." Driven Sports Statement of Material Facts ("DS SOF"), ECF Doc.

No. 22 ¶ 9.  As is evident from the complaints in the Craze Actions, the plaintiffs in these suits are not alleging that Driven Sports disparaged any other person's or organization's goods, products or services.  Driven Sports attempts to rewrite the complaints by referring to language in its website advertising, but its characterization of the allegations has no basis in the actual complaints in the Craze Actions.  Because the Craze Actions—either alone or in view of Driven Sports' proffered extrinsic evidence—do not seek damages for an injury arising out of the publication of disparaging material, there is no potential for coverage under the Policy, and no defense or indemnity obligation is triggered.

> **1.    The Craze Actions do not allege that Driven Sports made allegations specifically identifying and clearly derogating any person's products.**

Under New York law, "the unambiguous meaning of 'disparage' in the advertising injury portion of [an insurance policy] requires either an allegation that the advertisement specifically referred to the competitor's products or touted one's own products as superior to those of its competitors."  *Dollar Phone Corp. v. St. Paul Fire & Marine Ins. Co.*, No. CV-09-1640, 2012 WL 1077448, at *9 (E.D.N.Y. Mar. 9, 2012), *adopted by*, 2012 WL 1078994 (E.D.N.Y. Mar. 30, 2012), *aff'd*, 514 F. App'x 21 (2d Cir. 2013).  *See also Elite Brands, Inc. v. Pa. Gen. Ins. Co.*, 164 F. App'x 60, 62 (2d Cir. 2006) ("[A] claim of disparagement must contain 'specific assertions of unfavorable facts reflecting upon the rival product.'"); *JMZ USA, Inc. v. Lumbermens Mut. Cas. Co.*, 828 N.Y.S.2d 385, 386 (N.Y. App. Div. 2007) (allegations by brand-name apparel franchises that the insured wholesaler harmed the franchises by selling their apparel at discount stores did not assert an injury arising out of the publication of disparaging material).  To constitute disparagement, statements not expressly naming a competitor's product must still specifically reference competing products or contain an "identifying statement that compares the advertised product to those sold by competitors."  *Dollar Phone Corp.*, 2012 WL

1077448, at *8.  The New York case Driven Sports cites is not to the contrary.  *See Natural*

*Organics, Inc. v. OneBeacon Am. Ins. Co.*, 959 N.Y.S.2d 204, 207 (N.Y. App. Div. 2013)

(statement that company was "exclusive distributor" sufficient to trigger coverage because it

could "imply that [competitor's] inventory of [the] products was unauthorized").[4]

The Craze Actions do not allege that Driven Sports disparaged another person's or

organization's goods, products or services.  The plaintiffs do not identify any statements that

Driven Sports allegedly made about competitors' products.  Instead, they allege that Driven

Sports did not disclose that Craze contains a methamphetamine analog:

- The Nutrition Action "aris[es] from Defendants' false advertising and blatant misrepresentations regarding its Craze pre-workout nutritional supplement which is marketed as containing a natural extract as its active ingredient, when, in fact, it contains illegal analogs to methamphetamine."  Nutrition Action Compl., Exhibit 2 to Duffield Decl., ECF Doc. No. 19-6 ¶ 1.

- The consolidated Olvera/Wagner Action alleges that "Driven Sports markets Craze as containing only natural ingredients[, but] analysis showed that Craze contains ETH, a synthetic, designer drug.  The amounts of ETH found in Craze indicate that it is an added ingredient and not what would be expected even if it could be 'naturally occurring.'"  Consolidated Amended Complaint ("CAC"), Ex. 7 to Duffield Decl., ECF Doc. No. 19-11 ¶¶ 42, 51, 52.

---

[4]     Driven Sports also cites various cases from other jurisdictions.  The cases generally involve the insured's explicit negative comparison of its own product with those of competitors or statements that necessarily imply negative statements about identifiable competing products.  *See Winklevoss Consultants, Inc. v. Fed. Ins. Co.*, 11 F. Supp. 2d 995, 999 (N.D. Ill. 1998) (allegations that insured falsely advertised that its software was capable of "allow[ing] senior actuaries to be 'hands on' with respect to consulting assignments," but "[a specific competitor's] software was not; that [the insured] made false comparative statements about the speed of its software relative to competitors; and the specific allegation that [the insured] made misleading statements about the nature of both parties' products all satisfy the above laymen's definition of 'disparage'"); *Vector Prods., Inc. v. Hartford Fire Ins. Co.*, 397 F.3d 1316, 1318 (11th Cir. 2005) ("The underlying complaint [alleged] specific examples of comparisons which suggest that [the insured]'s product is superior to the 'leading brand[,]'" distinguishing the facts from cases involving "situations where the insured made no comparison to any other product, but merely touted its own product[.]"); *JAR Labs. LLC v. Great Am. E & S Ins. Co.*, 945 F. Supp. 2d 937, 943 (N.D. Ill. 2013) (the "underlying complaint allege[d] that [the insured]'s statements communicated 'false/misleading message' *about Lidoderm*[, a competing product]," and the court concluded that the insured's "literal statements can reasonably be read to identify Lidoderm® explicitly").

Driven Sports cites numerous California cases but curiously does not cite the California Supreme Court's recent decision in *Hartford Casualty Insurance Co. v. Swift Distribution, Inc.*, holding that "disparagement" in a general commercial liability insurance policy requires a plaintiff to show, whether by "express mention or by clear implication," "a false or misleading statement that (1) *specifically refers* to the plaintiff's product or business and (2) *clearly derogates* that product or business." 326 P.3d 253, 256 (Cal. 2014) (emphasis added).

- The Stewart Action alleges that the action is "based on [Driven Sports'] failure to disclose the presence of an illegal methamphetamine analog in its 'Craze' . . . pre-workout supplement in any of its representations regarding [Craze]." Stewart Action Compl., Ex. 8 to Duffield Decl., ECF Doc. No. 19-12 ¶ 1.

Notably, Driven Sports does not argue that alleged omissions about the true ingredients in its Craze product somehow disparaged other nutritional supplement manufacturers. Nor could it. Even if competitors were disadvantaged because they could not compete when Driven Sports allegedly "spiked" Craze with methamphetamine yet marketed the product as legal and natural, such allegations do not constitute "implied" disparagement. No competitors are identified, and the statements at issue do not reference any competing products—to the contrary, the "statements" are Driven Sports' omissions as to the alleged true ingredients of Craze. Driven Sports has not identified any case interpreting New York law that has found disparagement on such attenuated logic. To the contrary, the *Dollar Phone*, *Elite Brands*, *JMZ USA* and *Natural Organics* cases applying New York law hold that disparagement requires statements that directly identify or necessarily reference a competitor or its products. Such statements are absent here.

## 2. Driven Sports cannot obtain coverage by rewriting the complaints in the Craze Actions.

Recognizing that the actual complaints in the Craze Actions do not allege disparagement, Driven Sports attempts to gain coverage by recharacterizing the allegations in the suits. In its summary judgment brief ("DS Mem."), Driven Sports describes the Craze Actions as follows: "the *Craze* suits allege [] that Driven Sports has misrepresented its Craze product in a way that suggests competing products are inferior to or, at most, equivalent to Craze" (DS Mem. at 10-11); the "*Nutrition* suit's false advertising claims under the Lanham Act factually allege disparagement by Driven Sports' critical statements about competitors' products" (*id*. at 11); the consumer class action suits "allege that Driven Sports' publication of false and misleading information, particularly claiming Craze to be significantly better than competitors' products, has

harmed competitors and consequently has harmed consumers" (*id*. at 8). Specifically, Driven Sports asserts that the "accused statements invidiously comparing Craze's efficacy with all competing products, because the competing products contain 'worthless' ingredients and taste 'awful,' necessarily disparage[] the competitors and thereby injure[] consumers by misleading them and reducing competition." *Id*. at 13.

The Craze Actions simply do not contain the allegations Driven Sports describes. The reader will search the complaints in vain to find any statements that Driven Sports made about any competitors or competing products. Driven Sports cites two paragraphs in the initial complaints of the Olvera and Wagner Actions that quote several subsections of the California Legal Remedies Act. *Id.* at 11-12 (citing initial Olvera Compl. ¶ 66 and initial Wagner Compl. ¶ 66). Those paragraphs, which are identical, allege that Driven Sports violated the California Legal Remedies Act "in consumer transactions with the Plaintiff and the Class, which were intended to result in, and did result in the sale of the Flushmate System to the Plaintiff and the Putative Class," including "[d]isparaging the goods, services, or business of another by false or misleading representation of fact." These allegations merely reproduce statutory causes of action and are insufficient to create coverage. On their face, the allegations pertain to the "Flushmate System" (likely a cut-and-paste relic of a different lawsuit involving exploding toilets),[5] not Craze, and were removed in the amended complaints in the Olvera and Wagner Actions. Amended Compl. Wagner Action, Ex. 4 to Duffield Decl., ECF Doc. No. 19-9; Olvera/Wagner CAC, Ex. 7 to Duffield Decl., ECF Doc. No. 19-11. Moreover, it is well-established that conclusory references to particular causes of action do not create a duty to defend where the facts alleged do not potentially implicate coverage. *See Allstate Ins. Co. v. Mugavero*, 589 N.E.2d

---

[5] *See*, *e.g.*, Exploding Toilet Flushmate III Toilet Recall and Lawsuit Information, http://explodingtoilets.com/us-toilets-recalled-due-to-explosion-risk/.

365, 370 (N.Y. 1992) (duty to defend "analysis depends on the facts which are pleaded, not the conclusory assertions"); *Atl. Mut. Ins. Co. v. Terk Techs. Corp.*, 763 N.Y.S.2d 56, 62 (N.Y. App. Div. 2003) ("an insured may not by use of a 'shot-gun' allegation, create a duty to defend beyond that which was anticipated by the parties when they entered into the policy contract"). Driven Sports acknowledges this standard. *See* DS Mem. at 9, 12 ("the technical label of a cause of action is not significant for determining coverage," which is "potentially triggered *by the facts alleged*.") (emphasis in original). None of the *facts* alleged in the Craze Actions include statements Driven Sports made about competitors, negative or otherwise, and Driven Sports cites to none.

Driven Sports contends that the allegation in the Nutrition Action that Driven Sports' actions "have harmed and discredited the industry as a whole" constitutes disparagement. Nutrition Action Compl., Duffield Decl., Ex. 2, ECF Doc. No. 19-6 ¶ 25. General harm to the industry arising from Driven Sports' statements and actions in connection with its own product is too diffuse to constitute "disparagement" under the Policy's "personal and advertising injury" coverage. The court in *Dollar Phone* rejected the assertion that conduct that "damaged the reputation of the . . . industry" constituted a covered disparagement claim where it was based on the insured's misrepresentations about its own product. *Dollar Phone*, 2012 WL 1077448, at *9. Instead, the advertisements were found to have "hurt the [competitor's] business by unfairly shoring up [the insured]'s reputation." *Id.* Nutrition Distribution similarly alleges that Driven Sports' failure to disclose methamphetamine analog ETH as an ingredient harmed Nutrition Distribution's business because it was "[u]nable to compete with what turned out to be the illegal contents of Craze[.]" Nutrition Compl., Duffield Decl., Ex. 2, ECF Doc. No. 19-6 ¶ 17.

The New York Court of Appeals expressly has cautioned against engaging in a strained reading of an underlying complaint in order to find coverage the policy does not provide. In *Northville Industries Corp. v. National Union Fire Insurance Co.* the Court of Appeals considered whether certain lawsuits were covered under the "sudden and accidental" exception to a pollution exclusion. 679 N.E.2d 1044, 1048 (N.Y. 1997). "In determining whether the underlying complaint can be read as even potentially bringing the claim within . . . coverage, a court should not attempt to impose a duty to defend on an insurer through a strained, implausible reading of the complaint." *Id.* at 1049 (citing *State of New York v. AMRO Realty Corp.*, 936 F.2d 1420, 1428-29 (2d Cir. 1991), for proposition that, in construing duty to defend, court will not accept interpretation of underlying complaint that is "linguistically conceivable but tortured and unreasonable").[6] There is no plausible reading of the Craze Action complaints that yields factual allegations that Driven Sports made disparaging statements about another organization's products.

### 3. Driven Sports' website does not create coverage for the Craze Actions.

In the absence of any allegations of disparagement in the Craze Actions themselves, Driven Sports points to a printout of its website advertising Craze, which Driven Sports states makes "strong negative comments about competitors' products." DS Mem. at 7; Exhibit 104 to Declaration of Melissa Cahill in Support of Driven Sports Motion for Partial Summary Judgment ("Cahill Decl."), ECF Doc. 23-4. In general, the proffered printout of Driven Sports' website includes positive statements about Craze and the results that it provides; positive statements

---

[6] *Accord Atl. Mut. Ins. Co. v. Terk Techs. Corp.*, 763 N.Y.S.2d 56 (N.Y. App. Div. 2003) (no duty to defend where complaint allegations fell entirely within "knowledge of falsity" exclusion); *Rosenberg Diamond Dev. Corp. v. Empr's Ins. Co. of Wausau*, 144 F. App'x. 122, 124 (2d Cir. 2005) (no duty to defend lawsuit alleging intentional racial discrimination); *First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 166 (2d Cir. 1998) (no duty to defend where allegations of "emotional distress" did not arise from an "occurrence").

about Craze's proprietary blend of ingredients, including Creatine, Citrulline, Dendrobex, caffeine and Citramine; criticism of unnamed products containing arginine and geranium extract; and criticism of unnamed products that "taste so awful that they are hard to finish." The Court need not determine whether the statements in the website are disparaging.[7] Because Driven Sports cannot show that the plaintiffs in the Craze Actions actually are complaining about any of the identified statements on its website—except the alleged omission of methamphetamine from Craze's ingredients—its attempt to manufacture coverage by resorting to extrinsic evidence fails.

Although New York does not follow a strict "eight corners" rule and allows consideration of extrinsic evidence in certain circumstances, Driven Sports' proffered website excerpt is not relevant to the coverage analysis here. New York courts may find a duty to defend exists if an insurer has knowledge of actual facts outside the underlying complaint demonstrating that a lawsuit is covered. *See Fitzpatrick v. Am. Honda Motor Co.*, 575 N.E.2d 90, 90 (N.Y. 1991). *Fitzpatrick* plainly states, however, that the relevant "facts" that may inform an insurer are those that demonstrate that the lawsuit at issue "does involve [a covered] occurrence." *Id.* That is, outside facts are relevant only to the extent they demonstrate that the allegations of an existing lawsuit are covered. Such extrinsic evidence "cannot pertain to a claim that the plaintiff is not making." 1 Allan D. Windt, Insurance Claims & Disputes, § 4.3 (6th ed.). There is "no reason

---

[7]         The proffered website does not reference the product of any Driven Sports competitor by name. *Id.* The statements touting Craze are puffery of the type found not to constitute disparagement. *See Swift Distribution*, 326 P.3d at 266 (holding that statements describing insured's product as "'innovative,' 'unique,' 'superior,' and 'unparalleled'" and "patent-pending" were not specific enough to constitute disparagement of a competing product for purposes of a commercial general liability policy and are akin to "mere puffing" that cannot constitute disparagement); *see also Julie Research Labs., Inc. v. Gen. Resistance, Inc.*, 268 N.Y.S.2d 187, 189 (N.Y. App. Div. 1966) ("[m]ere general statements of comparison, declaring that the defendant's goods are the best on the market, or are better than the plaintiff's, are privileged so long as they contain no specific assertions of unfavorable facts reflecting upon the rival product").

why the court should . . . imagine[ ] what is not in the complaint in order to find liability which was not intended." *Chicago Ins. Co. v. Borsody*, 165 F. Supp. 2d 592, 597 (S.D.N.Y. 2001).[8]

Moreover, when "determining whether the insurer is contractually bound to provide a defense, the contract itself must always remain a primary point of reference." *Fitzpatrick*, 575 N.E.2d at 93. In *Fitzpatrick*, coverage turned on who owned the vehicle involved in an accident. The court accordingly held that the insurer could not ignore evidence about who actually owned the vehicle. *Id.* at 94. Here, in contrast, Driven Sports is not offering extrinsic evidence about the allegations in the complaints; it is trying to entirely rewrite the complaints. The Policy affords a duty to defend suits seeking damages because of injury arising out of the publication of material that disparages the products of another. Statements that Driven Sports may have made that are not identified as the source of the underlying plaintiffs' injury are not germane to any duty to defend the Craze Actions because they cannot demonstrate that the Craze Actions are suits seeking damages for a "personal or advertising injury."

None of the plaintiffs in the Craze Actions makes any allegation that he, she or it was injured by any statement about arginine, geranium extract, the taste of Craze or other products, or indeed any statement on the proffered website except the omission to disclose the presence of a methamphetamine analog in Craze. Nutrition Distribution is a Driven Sports competitor, but it does not assert that it was one of the companies referenced in the proffered website or contend that it was injured by any of the statements about such unspecified companies. Nutrition Distribution's contention is not that Driven Sports made negative statements about Nutrition

---

[8]     The U.S. District Court for the Southern District of New York reasoned similarly when applying California law in *Lexington Ins. Co. v. MGA Entm't, Inc.,* 961 F. Supp. 2d 536, 550 (S.D.N.Y. 2013) ("While a court will consider facts fairly inferable from—and potential amendment to—the underlying complaint, any such amendment must be supported by the facts already pled in the complaint . . . . [and] [a]n insurer will not be compelled to defend its insured when the potential for liability is tenuous and farfetched. . . . An insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability" or "speculate about unpled third party claims to manufacture coverage.") (internal quotation marks and citation omitted).

Distribution's "Super Size" product, but that Craze contained an undisclosed ingredient with which Nutrition Distribution could not compete. *E.g.*, Nutrition Action Compl, Ex. 2 to Duffield Decl., ECF Doc. No. 19-6 ¶ 17. Only the Stewart Action directly references the proffered website, but it alleges only that Driven Sports makes claims about the ingredients of Craze without disclosing that its product contains N,α-diethylphenylethylamine ("N,α-DEPEA")." Stewart Compl., Ex. 8 to Duffield Decl., ECF Doc. No. 19-12 ¶ 15.

The Craze Actions are not suits seeking damages for injury arising out of the publication of material that disparages the products of another. The plaintiffs in the Craze Actions contend they were injured because Driven Sports did not disclose a methamphetamine analog in Craze. Driven Sports cites no case that permits an insured to create a duty to defend by proffering evidence outside the underlying complaints that has no relevance to the injuries actually alleged by the underlying plaintiffs and supposing that the underlying plaintiffs seek damages based on that evidence instead of their actual allegations. Evidence that Driven Sports made statements about which the underlying plaintiffs do not complain cannot possibly demonstrate coverage for damages arising out of the injury the plaintiffs actually allege in the Craze Actions. *See* Windt, Insurance Claims & Disputes, § 4.3. ("If a claimant has chosen not to pursue a covered claim, a duty to defend does not exist. Extrinsic evidence, therefore, about such an unasserted covered claim cannot create a duty to defend.").

**B. The Failure to Conform Exclusion precludes coverage**

Driven Sports again relies on its unsupportable characterization of the Craze Actions to argue that the Policy's Failure to Conform Exclusion does not apply. According to Driven Sports, the Craze Actions "allege that Driven Sports attacked the efficacy of competitors' products in comparison to its own while allegedly failing to list certain ingredients on its labels." DS Memo at 15. The Craze Actions certainly allege that Driven Sports failed to list ingredients

actually present in Craze, and therefore falsely asserted that Craze's ingredients are "natural," but they make no allegation that Driven Sports attacked competitors. *E.g.*, Olvera/Wagner CAC, Ex. 7 to Duffield Decl. ECF Doc. No. 19-11 ¶¶ 42-48.

The plain language of the Failure to Conform Exclusion bars coverage for alleged injury "arising out of the failure of [Driven Sports'] goods, products or services to conform with any statements of quality or performance made in [Driven Sports'] 'advertisement.'" DS SOF ECF Doc. 22 ¶ 8; *see Fed. Ins. Co. v. Am. Home Assurance Co.,* 639 F.3d 557, 568 (2d Cir. 2011) ("[T]he phrase 'arising out of' is 'ordinarily understood to mean originating from, incident to, or having connection with.'"). The gravamen of the Craze Actions is that Craze—Driven Sports' product—included ingredients that were inconsistent with the advertised statements of its ingredients. Driven Sports' assertion that the Craze Actions "do not allege that goods failed to conform" is flatly contradicted by the pleadings. DS Mem at 14. The Nutrition Action alleges that Craze "is marketed as containing a natural extract as its active ingredient, when, in fact, it contains illegal analogs to methamphetamine." Ex. 2 to Duffield Decl., ECF Doc. No. 19-6 ¶ 1. Similarly, the operative complaint in the Olvera and Wagner Actions alleges "Driven Sports markets Craze as containing only natural ingredients. . . . [but] analysis showed that Craze contains ETH, a synthetic, designer drug." Olvera/Wagner CAC, Ex. 7 to Duffield Decl. ECF Doc. No. 19-11 ¶¶ 42, 51. Moreover, the Stewart Action alleges that the "[p]laintiff purchased 'Craze' seeking a product with the qualities represented in [Driven Sports'] advertising, labelling, and marketing[, which] induc[ed] him into purchasing a product that no reasonable consumer would purchase had Defendant disclosed the presence of N,α-DEPEA." Stewart Compl., Ex. 8 to Duffield Decl. ¶ 19, 21. The injuries alleged in the Craze Actions clearly arise out of the asserted failure of Craze to conform to Driven Sports' statements of its ingredients.

Driven Sports relies on the Ninth Circuit case *Safety Dynamics, Inc. v. General Star Indemnity Co.* for its assertion that the Failure to Conform Exclusion does not apply here. 475 F. App'x 213 (9th Cir. 2012). In that case, the insured was sued by a competitor alleging, among other things, that the insured made false statements about its own product. In a brief, unpublished opinion applying Arizona law, the court there stated that the "failure to conform" exclusion did not apply because the lawsuit asserted "a competitive injury" and the exclusion applies to the "failure of goods, not the failure of advertising." *Id.* at 214.

This authority is unpersuasive. As an initial matter, three of the Craze Actions (Olvera, Wagner and Stewart) were brought by dissatisfied consumers and do not allege "competitive injury," so the reasoning of *Safety Dynamics* is wholly inapplicable to these actions. Moreover, the Failure to Conform Exclusion does not contain any language distinguishing between claims by consumers and claims by competitors. *See* DS SOF ¶ 8. Cases interpreting failure to conform exclusions under New York law and nationwide do not distinguish between consumer and competitor claims. This court and the Second Circuit, applying New York law, applied a similar exclusion to false advertising claims in *Dollar Phone* in which an insured's competitor asserted that the insured made false statements about the true characteristics of the insured's products. 2012 WL 1077448, at *1, *aff'd* 514 F. App'x 21. In *Dollar Phone*, the insured's competitor alleged that the insured "defrauded their customers by failing to provide the number of minutes promised on their calling cards and in their advertisements," asserting various causes of action, including false advertising under the Lanham Act. 2012 WL 1077448, at *1. The court held that coverage was barred by an exclusion for "advertising injury that results from the failure of your products, your work, or your completed work to conform with advertised quality or performance." *Id.* at *10. The court held that a competitor's allegations that the insured

falsely represented the quality of its own product "is precisely the type of harm contemplated in the plain language of the non-conformity exclusion." *Id.*

Numerous other courts have applied policy provisions similar to the Failure to Conform Exclusion to claims by the insured's competitor. *E.g.*, *R.C. Bigelow, Inc. v. Liberty Mut. Ins. Co.*, 287 F.3d 242, 246 (2d Cir. 2002) (competitor alleged that the insured's packaging failed to state that its teas were artificially flavored); *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, LLC*, 692 S.E.2d 605, 618 (N.C. 2010) (competitor alleged that insured falsely advertised its product as "naturally derived" when the product actually contained a "synthetic chemical compound"); *Jarrow Formulas, Inc. v. Steadfast Ins. Co.*, No. 2:10-cv-801, 2011 WL 1399805, at *6 (C.D. Cal. Apr. 12, 2011) (concluding that exclusion barred coverage for claim alleging that insured falsely represented its product would perform as well as competitors' products performed in a study), *aff'd*, 509 F. App'x 591 (9th Cir. 2013); *Total Call Int'l, Inc. v. Peerless Ins. Co.*, 104 Cal. Rptr. 3d 319, 328 (Cal. Ct. App. 2010) (exclusion barred coverage for competitor's claim alleging that insured's calling cards did not provide customers with the advertised number of minutes); *see also See also PCB Piezotronics, Inc. v. Kistler Instrument Corp.*, No. 96-cv-0512E(F), 1997 WL 800874, at *3 (W.D.N.Y. Dec. 31, 1997) (failure of goods to conform exclusion arguably applied to count of complaint by insured's competitor alleging that "[insured's] advertisement misrepresented the nature, characteristics and qualities of [insured's] products").

The Craze Actions arise out of the alleged failure of Craze to conform to Driven Sports' statements on its label and other advertising because the product assertedly contained a methamphetamine analog not disclosed in such advertising. The Failure to Conform Exclusion therefore precludes the possibility of coverage for each of the Craze Actions.

### C. Supplementary Payments include defense expenses and reduce the Policy's limit of liability

Whether defense expenses reduce the Policy's limit of liability implicates two simple questions: first, whether "Supplementary Payments" include defense expenses; and second, whether "Supplementary Payments" reduce the limit of liability. Although Driven Sports attempts to complicate these issues, the Policy unequivocally provides that defense expenses are part of Supplementary Payments and that Supplementary Payments reduce the limit of liability.

### 1. "Supplementary Payments" include defense expenses.

The "Supplementary Payments" coverage under the Policy states:

> We will pay, with respect to any claim we investigate or settle or any "suit" against an insured we defend:
>
> a. All expenses we incur.
> . . .
> d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit" . . . .

Policy, Section III, as modified by Endorsement No. 8, ECF Doc. 1-3 at 41 of 53. General Star's position is straightforward: "all expenses" incurred "with respect to any claim we investigate or settle or any 'suit' against an insured we defend" includes defense expenses.

Driven Sports contends that the Supplementary Payments provision covers only "miscellaneous expenses" excluding attorneys fees and costs. DS Mem. at 19. The argument fails because the provision includes "all" expenses incurred by General Star as well as "all" reasonable expenses incurred by Driven Sports to assist in the defense; there is no qualifier for "miscellaneous" expenses. *See, e.g.*, *In re Pandora Media, Inc.*, 12 CIV. 8035 DLC, 2013 WL 5211927, at *9 (S.D.N.Y. Sept. 17, 2013) ("'All' means all."); *In re Initial Pub. Offering Secs. Litig.*, 241 F. Supp. 2d 281, 383 (S.D.N.Y. 2003) ("All means *all*; any means *any*."). Driven Sports argues that attorneys fees are not like bonds, costs or interest, the other items included as

Supplementary Payments. But the plain text of the provision shows that "Supplementary Payments" includes "all" defense-related expenses and then lists specific items in order to limit them (for instance, bail bonds, but only up to $250; the cost of bonds but not the bonds themselves; loss of earnings but only up to $250/day, etc.). Driven Sports asks, "[i]f all costs of defending, settling, and indemnifying a lawsuit are provided as Supplementary Payments, what is left of the policy?" DS Mem. at 20. The plain answer is that the Supplementary Payments provision does not include indemnity payments, i.e., settlements and judgments.

Numerous courts have held that "supplementary payments" provisions like the one in the Policy include defense expenses. *See* GS Mem. at 22-23 (collecting cases). Driven Sports cites one case under New York law, *In re East 51st Street Crane Collapse Litigation*, 960 N.Y.S.2d 364 (N.Y. App. Div. 2013), which addressed materially different policy language. In that case, the court held that the policy was ambiguous as to whether "supplementary payments" included defense expenses because, on the one hand, the policy stated that supplementary payments reduce the limit of liability; but on the other hand, the policy also provided that the insurer's duty to defend only would end when the policy limit was exhausted by payment of settlements or judgments. *Id.* at 403. Driven Sports otherwise cites cases determined under California law, which it agrees is not the applicable law. These cases are not authoritative and are not even arguably persuasive as none of them addresses language similar to that of the Policy.[9] The cases provide no basis on which to ignore the plain policy language providing that all expenses

_____

[9] The court in *Powerine Oil Co. v. Superior Court*, determined that an "ultimate net loss" provision expanded the insurer's obligation beyond the payment of damages, but did not determine whether that language—much less the language of the Policy here, reduced the policy limit. 118 P.3d 589, 605 (Cal. 2005) ("[E]ven if the definition of 'ultimate net loss' also serves the function of "burning limits,' . . . the 'ultimate net loss' definition also serves the function of 'further defin[ing]' the scope of indemnity coverage under these policies well beyond 'damages'[.]"). The court in *Illinois Union Insurance Co. v. North County Ob-Gyn Medical Group, Inc.,* determined that an arbitration panel's decision was not "completely irrational" because policy provisions—distinct from those here—referenced "Loss" incurred by the insured—not the insurer. No. 09-cv-2123, 2010 U.S. Dist. LEXIS 50095, at *10-12 (S.D. Cal. May 18, 2010). Here, the Policy provides that Supplementary Payments include expenses incurred by both General Star and Driven Sports. Policy, ECF Doc. No. 1-3 at 41 of 53.

General Star incurs with respect to any suit it defends constitute Supplementary Payments that reduce the limit of liability.

## 2. Supplementary Payments erode the Policy's limit of liability.

The Policy unequivocally states that Supplementary Payments erode the limit of liability in the insuring clause, the Declarations page listing all endorsements, the definition of "Supplementary Payments," and the section of the Policy governing limits of insurance:

- "Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments, settlements <u>or</u> Supplementary Payments under Coverages A or B." Policy, Section I, Coverage B, Insuring Agreement as amended by Endorsement 8;

- "Supplementary Payments – Coverage A and B To Be Included Within Limits of Insurance." Policy, Declarations Page listing Endorsements;

- "**MODIFIES COVERAGE UNDER THIS POLICY SO SUPPLEMENTARY PAYMENTS APPLICABLE TO COVERAGE A AND B ARE SUBJECT TO THE LIMITS OF INSURANCE**." Policy, Endorsement 8;

- "**THESE PAYMENTS, EXCLUSIVE OF SALARIES AND EXPENSES OF OUR OWN EMPLOYEES, WILL REDUCE THE LIMITS OF INSURANCE**." Policy, Definition of "Supplementary Payments" as amended by Endorsement 8;

- "The General Aggregate Limit is the most we will pay for the sum of: . . . b. Damages and Supplementary Payments under Coverage B. . . . ."; and "the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages and Supplementary Payments because of all 'personal and advertising injury' sustained by any one person or organization." Policy, Section III, Limits of Insurance, as amended by Endorsement 8.

Driven Sports' assertions that the Policy "nowhere clearly informs policyholders that General Star is reducing policy benefits" and that eroding limits language is "buried in an endorsement" is untenable in the face of these unambiguous provisions. DS Mem. at 16, 19. Driven Sports essentially argues that a policyholder is justified in reading a policy for benefits but not limitations and the base form but not the endorsements. This approach to policy interpretation is wholly inconsistent with New York law: "[a] policy is read as a whole and in

17

construing an endorsement to an insurance policy, the endorsement and the policy must be read together, and the words of the policy remain in full force and effect except as altered by the words of the endorsement." *Richner Commc'ns, Inc. v. Tower Ins. Co.*, 898 N.Y.S.2d 615, 617 (N.Y. App. Div. 2010) (internal quotation marks omitted); *see also Westchester Fire Ins. Co. v. MCI Commc'ns Corp.*, 902 N.Y.S.2d 350, 350-51 (N.Y. App. Div. 2010) (affirming summary judgment for insurer because "endorsement 30 in the 1992–95 policies at issue [is] unambiguous in providing that MCI is liable for its own defense costs"). Endorsement No. 8 to the Policy is clear and unambiguous. Nor does it "reduce" coverage for Driven Sports—Endorsement No. 8 was included in the Policy at its inception and defines the scope of coverage for which Driven Sports contracted.

Driven Sports also submits a declaration from its President Melissa Cahill about Driven Sports' purported expectations of coverage under the Policy, but that testimony is incompetent to establish the Policy's meaning or even create a fact issue on summary judgment. *See* Cahill Decl. ¶¶ 5-6. "It is well-settled that the subjective belief of a party to a contract cannot override its plain language, which here controls the question of coverage as a matter of law." *Nautilus Ins. Co. v. Barfield Realty Corp.*, No. 11 civ. 7425 JPO, 2012 WL 4889280, at *7 (S.D.N.Y. Oct. 16, 2012) (*citing Teichman v. Community Hosp.*, 87 N.Y.2d 514, 520 (N.Y. 1996)). A "party's naked assertion or belief does not raise a genuine issue of material fact where summary judgment is concerned." *Id.* The Policy is the "the best evidence of what the parties agreed upon and a unilateral expression of one party's postcontractual subjective understanding of the terms of the agreement . . . is not probative as an aid to the interpretation of the contract." *Von Biedermann v. Echo Metrix, Inc.*, No. 10-cv-1805, 2012 WL 3260285, at *5 (E.D.N.Y. Aug. 6, 2012); *see also Murray Walter, Inc. v. Sarkisian Bros., Inc.*, 589 N.Y.S.2d 613, 616 (N.Y. App. Div. 1992)

(letter did not constitute "admissible extrinsic evidence of the parties' mutual intent" and therefore was not probative to aid interpretation of contract); *accord LaSalle Bank Nat'l Ass'n. v. Nomura Asset Capital Corp.*, 424 F.3d 195, 208 n.10 (2d Cir. 2005).

### D. General Star is entitled to recoup the amounts it has paid for Driven Sports' defense of the Craze Actions.

Driven Sports asserts that even if the Court determines that the Policy does not afford coverage for the Craze Actions, General Star is not permitted to recoup the amounts it has paid for Driven Sports' defense of those suits.  DS Mem. at 23-25.  Driven Sports contends that New York courts have not ruled on the issue; that the "majority of recent cases" do not support recoupment; and that the Court should follow the Pennsylvania decision *American & Foreign Insurance Co. v. Jerry's Sport Center, Inc.*, 2 A.3d 526 (Pa. 2010).

First, as discussed in General Star's summary judgment motion, numerous New York cases have recognized that an insurer's advancement of defense expenses is "subject to recoupment in the event it is ultimately determined the Policy does not cover the claim." *Trustees of Princeton Univ. v. Nat'l Union Fire Ins. Co.,* 839 N.Y.S.2d 437, 2007 N.U. 50753(U), slip op. at *5 (N.Y. Sup. Ct. 2007), *aff'd*, 859 N.Y.S.2d 174 (N.Y. App. Div. 2008); GS Mem. at 18-19 (collecting cases).  General Star is not aware of any case applying New York law in which a court has held that an insurer does not have the right to recoup non-covered defense expenses.  Nor does Driven Sports cite any such case.

Second, the majority of courts to have considered the issue—including numerous recent cases nationwide—have concluded that an insurer may recoup defense costs upon a determination that the underlying claim is not covered.[10]  Indeed, the *Jerry's Sport Center* case

---

[10]    *Wallis v. Centennial Ins. Co.*, 982 F. Supp. 2d 1114, 1131-32 (E.D. Cal. 2013); *Certain Interested Underwriters at Lloyd's, London Subscribing to Certificate of Ins. No. 9214 v. Halikoytakis*, No. 8:09-CV-1081, 2012 WL 487464, at *3 (M.D. Fla. Feb. 2, 2012); *Ill. Union Ins. Co. v. NRI Constr., Inc.*, 846 F. Supp. 2d 1366,

upon which Driven Sports relies expressly notes that the "majority view" among jurisdictions is to permit recoupment. *Jerry's Sport Center*, 2 A.3d at 532. While Driven Sports cites cases for the "minority view" disallowing recoupment, a number of the cases it cites do not in fact speak to the issue of recouping amounts incurred for claims that did not trigger a duty to defend. [11]

Third, *Jerry's Sport Center* is legally and factually inapposite. Setting aside that New York courts permit recoupment and follow the Restatement (Third) of Restitution and Unjust Enrichment (*see* GS Mem. at 19-20), in *Jerry's Sport Center*, the court concluded the insurer was not entitled to reimbursement because "uncertainty existed about coverage," so the insurer was obligated to defend until relieved of that duty through its coverage action. 2 A.3d at 544. New York law unequivocally holds that the duty to defend is "not triggered where it may be concluded, as a matter of law, that there is no possible factual or legal basis upon which the insurer might eventually be held to be obligated to indemnify the claimant under any provision of the insurance policy." *Bruckner Realty, LLC v. Cnty. Oil Co.*, 838 N.Y.S.2d 87, 89 (N.Y.

---

1377 (N.D. Ga. 2012); *Nucor Corp. v. Emp'rs Ins. Co.*, No. 10-0174, 2012 WL 6117029, at*4 (Ariz. Ct. App. Nov. 23, 2012); *Elec. Ins. Co. v. Marcantonis*, No. 09-5076, 2011 WL 883282, at *2 (D.N.J. Mar. 11, 2011); *Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co.*, 598 F.3d 257, 268 (6th Cir. 2010) (applying Kentucky law); *Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1094 (10th Cir. 2010) (applying Colorado law); *Auto-Owners Ins. Co. v. Prairie Auto Grp.*, Inc., No. 06-5065-KES, 2008 WL 2403381, at *3 (D.S.D. June 10, 2008); *Cincinnati Ins. Co. v. Grand Pointe, LLC*, 501 F. Supp. 2d 1145, 1169 (E.D. Tenn. 2007); *Scottsdale Ins. Co. v. Sullivan Props., Inc.*, No. 04-00550, 2007 WL 2247795, at *4 (D. Haw. Aug. 2, 2007); *Travelers Cas. & Sur. Co. v. Ribi ImmunoChem Research, Inc.*, 108 P.3d 469, 480 (Mont. 2005); *Hebela v. Healthcare Ins. Co.*, 851 A.2d 75, 86 (N.J. Super. Ct. App. Div. 2004); *Sec. Ins. Co. v. Lumbermens Mut. Cas. Co.*, 826 A.2d 107, 125 (Conn. 2003)*; United Nat'l Ins. Co. v. SST Fitness Corp.*, 309 F.3d 914, 921 (6th Cir. 2002) (applying Ohio law); *Nationwide Mut. Ins. Co. v. Flagg*, 789 A.2d 586, 597 (Del. Super. Ct. 2001); *Colony Ins. Co. v. G & E Tires & Serv., Inc.*, 777 So. 2d 1034, 1039 (Fla. Dist. Ct. App. 2000); *Buss v. Superior Court*, 65 Cal. Rptr. 2d 366 (Cal. 1997); *Resure, Inc. v. Chem. Distribs., Inc.*, 927 F. Supp. 190, 194 (M.D. La. 1996).

[11]      *See* DS Mem. at 24. *Riley Stoker Corp. v. Fidelity & Guaranty Insurance Underwriters, Inc.*, 26 F.3d 581, 589-90 (5th Cir. 1994), does not involve recoupment at all but merely held that an insurer that had a duty to defend was obligated to defend the entire action, including covered and uncovered claims. Similarly, *Perdue Farms, Inc. v. Travelers Cas. and Sur. Co.*,448 F.3d 252, 258 (4th Cir. 2006), held that an insurer could not obtain "partial reimbursement" after defending an action including covered and non-covered counts—the Craze Actions are outside of the scope of coverage in their entirety. And in *Dash v. Chicago Insurance Co.*, No. Civ. A. 00-11911-DPW, 2004 WL 1932760, at *10 (D. Mass. Aug. 23, 2004), the court clarified that it was not considering the "more straight-forward claim of an insurer seeking reimbursement for costs incurred in defending noncovered claims" but instead an insurer that had breached its duty to defend.

App. Div. 2007).  General Star has moved for summary judgment that, as a matter of law, it never had a duty to defend the Craze Actions; there is no uncertainty.  In addition, the court in *Jerry's Sport Center* relied heavily on the fact that the carrier exercised its right to appoint defense counsel over the insured's desire to be jointly represented by counsel for other defendants.  *Jerry's Sport Ctr.*, 2 A.3d at 530, 532, 545.  The court concluded no unjust enrichment would occur absent recoupment because the carrier obtained *de facto* control of the defense.  *Id*. at 545.  In contrast, Driven Sports selected its own counsel, and General Star is not controlling the defense.  DS SOF ¶ 39.

A rule that insurers are not permitted to recoup non-covered defense expenses would be inequitable and lead to perverse incentives.  Here, General Star does not believe the Craze Actions are covered.  Nevertheless, it agreed to advance defense expenses while giving Driven Sports notice that it intended to seek recoupment and availed itself of the declaratory judgment mechanism that New York courts urge insurers to use.  *See K2 Inv. Grp., LLC v. Am. Guarantee & Liab. Ins. Co.*, 22 N.Y.3d 578, 586, 764, *reargument denied*, 23 N.Y.3d 939 (N.Y. 2014) ("an insurance company that disclaims in a situation where coverage may be arguable is well advised to seek a declaratory judgment concerning the duty to defend or indemnify the purported insured").  If the Court holds the Policy affords coverage, then Driven Sports will not be harmed because General Star already has been paying for its defense.  If the Court holds the Policy does not afford coverage and permits recoupment, then Driven Sports will not be any worse off than if General Star had simply denied coverage without advancing defense expenses.  If the Court holds the Policy does not afford coverage but disallows recoupment, however, then Driven Sports will have obtained a windfall.  Moreover, such a ruling will discourage insurers from advancing defense expenses pending the outcome of declaratory judgment actions.  *See United*

*Nat'l Ins. Co. v. SST Fitness Corp.*, 309 F.3d 914, 921 (6th Cir. 2002) (permitting recoupment "promotes the policy of ensuring defenses are afforded even in questionable cases"); *Krueger Int'l , Inc. v. Fed. Ins. Co.*, 647 F. Supp. 2d 1024, 1044-45 (E.D. Wis. 2009) ("allowing reimbursement encourages insurers to provide a defense, which expedites litigation and aids insureds, rather than opting to refuse coverage at the outset.  It also leaves the insured in the same position it would have occupied had the insurer refused to provide a defense, as it was entitled to do, at the outset.").

Consistent with existing New York case law and sound public policy, the Court should permit General Star to recoup the amounts it has advanced for Driven Sports' defense of the Craze Actions.

### E.      Driven Sports is not entitled to fees in this action.

Because the Policy does not afford coverage for the Craze Actions, the Court need not address Driven Sports' request for attorney fees.  Driven Sports only would be entitled to coverage attorney fees if it prevails in this action.  *See U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*, 822 N.E.2d 777, 780 (N.Y. 2004) (an insured "who prevails on the merits, may recover attorneys' fees incurred in defending against the insurer's [declaratory judgment] action" regarding the duty to defend).  Moreover, any fee award would encompass only those fees reasonably incurred to defend against General Star's claims.  *See, e.g.*, *Nat'l Cas. Ins. Co. v. City of Mount Vernon*, 515 N.Y.S.2d 267, 269 (N.Y. App. Div. 1987) (insured was not "entitled to recover the expenses incurred in prosecuting their counterclaim for fees").

## III.    CONCLUSION

For the foregoing reasons and those set forth in General Star's memorandum of law in support of its motion for summary judgment, General Star respectfully requests that the Court deny Driven Sports' motion for partial summary judgment and grant General Star's motion.

Date:  August 11, 2014                    Respectfully submitted,

/s/ Cara Tseng Duffield
Cara Tseng Duffield (admitted *pro hac vice*)
John E. Howell (admitted *pro hac vice*)
WILEY REIN LLP
1776 K Street N.W.
Washington, DC 20006
(202) 719-7000
cduffield@wileyrein.com
jhowell@wileyrein.com

Vincent J. Proto, Esq.
BUDD LARNER P.C.
150 John F. Kennedy Parkway
Short Hills, NJ 07078-2703
(973) 315-4435
vproto@buddlarner.com

*Attorneys for Plaintiff General Star Indemnity Company*