## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GENERAL STAR INDEMNITY COMPANY, | )<br>) **Civil Action No.:** 14-cv-03579-JFB |
| Plaintiff, | ) |
| vs. | ) |
| DRIVEN SPORTS, INC., | ) |
| Defendant. | ) |

## REPLY TO PLAINTIFF'S OPPOSITION TO
## DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| I. | SUMMARY OF ARGUMENT | 1 |
| II. | "IMPLICIT DISPARAGEMENT" IS ACTIONABLE UNDER NEW YORK, AS WELL AS CALIFORNIA LAW, AND POTENTIALLY COVERED CLAIMS ARE ASSERTED HERE | 1 |
|  | A. General Star Ignores Driven Sports' Proof Of Damages in Its Motion | 1 |
|  | B. General Star Recycles The Same Discredited Arguments Rejected By The Ninth Circuit | 2 |
|  | C. General Star's Attempt to Distinguish Germane New York Coverage Cases Falls Flat | 3 |
|  | D. Even Under the Restrictive *Swift* Case Analysis, Implicit Disparagement is Asserted | 4 |
| III. | THE "FAILURE TO CONFORM" EXCLUSION DOES NOT APPLY HERE | 6 |
| IV. | DEFENSE COSTS DO NOT REDUCE POLICY LIMITS | 7 |
|  | A. General Star's Duty To Defend Is Independent Of "Supplementary Payments" | 7 |
|  | B. "All Expenses" Does Not Include Defense Expenses Such As Attorneys' Fees and Costs | 8 |
|  | C. At Most, General Star's Conflicting Construction of "All Expenses" Renders the Phrase Ambiguous | 8 |
|  | D. Absent a Specific Provision Identifying the Policies as Self-Liquidating, the Presumption Is That the Defense Provided is Outside of Policy Limits | 9 |
| V. | THE "MAJORITY RULE," AS WELL AS THE "MODERN TREND" DOES NOT IMPLY A RIGHT TO REIMBURSEMENT THAT IS NOT IN THE POLICY | 10 |

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Acme United Corp. v. St. Paul Fire & Marine Ins. Co.*,
 214 F. Appx. 596 (7th Cir. 2007)...............................................................................................3

*Apartment Inv. & Mgmt. Co. v. Nutmeg Ins. Co.*,
 593 F.3d 1188 (10th Cir. 2010) ................................................................................................2

*Brewer v. Vill. of Old Field*,
 311 F. Supp. 2d 382 (E.D.N.Y. 2004) ......................................................................................6

*Bridge Metal Indus., LLC. v. Travelers Indem. Co.*,
 559 Fed. Appx. 15, 2014 U.S. App. LEXIS 4463 (2d Cir. (N.Y.) Mar. 11, 2014) ...................1

*City of Johnstown, N.Y. v. Bankers Standard Ins. Co.*,
 877 F.2d 1146 (2d Cir. (N.Y.) 1989) ........................................................................................1

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*,
 911 F.2d 242 (9th Cir. 1990) ....................................................................................................3

*Dish Network Corporation, LLC v. Arch Specialty Ins. Co.*,
 659 F.3d 1010 (10th Cir. (Colo.) 2011) ....................................................................................6

*Doe v. CIGNA Life Ins. Co.*,
 304 F. Supp. 2d 477 (W.D.N.Y. 2003) .....................................................................................7

*Elite Brands, Inc. v. Pa. Gen. Ins. Co.*,
 164 F. Appx. 60 (2d Cir. 2006)..................................................................................................3

*Inc. v. St. Paul Fire & Marine Ins. Co.*,
 590 F. Supp. 2d 1244 (N.D. Cal. 2008) ....................................................................................3

*Napoli, Kaiser & Bern, LLP v. Westport Ins. Corp.*,
 295 F. Supp. 2d 335 (S.D.N.Y. 2003) ......................................................................................6

*Safety Dynamics, Inc. v. Gen. Star Indem. Co.*,
 475 Fed. Appx. 213 (9th Cir. (Az.) 2012) ............................................................................2, 6

*Travelers Ins. Companies v. Penda Corp.*,
 974 F.2d 823 (7th Cir. 1992) ....................................................................................................2

*Tri-Star Theme Builders, Inc. v. OneBeacon Ins. Co.*,
 426 F. App'x 506 (9th Cir. 2011)..............................................................................................2

*Village of Sylvan Beach, N.Y. v. Travelers Indem. Co.*,
 55 F.3d 114 (2d Cir. (N.Y.) 1995) ................................................................................1

*Weber v. Indem. Ins. Co. of N. Am.*,
 345 F. Supp. 2d 1139 (D. Haw. 2004) ..........................................................................9

*Zenith Elecs. Corp. v. Exzec, Inc.*,
 182 F.3d 1340 (Fed. Cir. 1999) ....................................................................................3


**STATE CASES**

*242-44 E. 77th St., LLC v. Greater N.Y. Mut. Ins. Co.*,
 31 A.D.3d 100 (1st Dept. 2006) ...................................................................................8

*Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*,
 606 Pa. 584, 2 A.3d ....................................................................................................10

*Automobile Ins. Co. of Hartford v. Cook*,
 7 N.Y.3d 131 (2006) ....................................................................................................6

*Bank of the West v. Superior Court*,
 833 P.2d 545 (Cal. 1992) .............................................................................................1

*Belt Painting Corp. v. TIG Ins. Co.*,
 100 N.Y.2d 377 (2003) ................................................................................................8

*Breed v. Insurance Co. of N. Am.*,
 46 N.Y.2d 351 (1978) ..................................................................................................8

*Cont'l Cas. Co. v. Rapid-Am. Corp.*,
 80 N.Y.2d 640 (1993) ..................................................................................................6

*Doyle v. Allstate Ins. Co.*,
 1 N.Y.2d 439, 154 N.Y.S.2d 10 (1956) .......................................................................2

*Fitzpatrick v. American Honda Motor Co.*,
 78 N.Y.2d 61 (1991) ....................................................................................................4

*JMZ USA, Inc. v. Lumbermens Mut. Cas. Co.*,
 36 A.D.3d 555 (1st Dept. 2007) ...................................................................................3

*Matter of E. 51st St. Crane Collapse Litig.*,
 103 A.D.3d 401 (1st Dept. 2013) ..............................................................................8, 9

*Matter of Mostow v. State Farm Ins. Cos.*,
 88 N.Y.2d 321 (1996) ..................................................................................................8

*Moneta Dev. Corp. v. Generali Ins. Co. of Trieste & Venice*,
    212 A.D.2d 428 (1995) .................................................................................................. 8

*Natural Organics, Inc. v. OneBeacon Am. Ins. Co.*,
    102 A.D.3d 756 (2d Dept. 2013) .................................................................................. 3

*New York Cent. Mut. Fire Ins. Co. v. Sweet*,
    16 A.D.3d 1013 (3d Dept. 2005) .................................................................................. 8

*Powerine Oil Co., Inc. v. Superior Court*,
    37 Cal. 4th 377 (2005) .................................................................................................. 9

*QBE Ins. Corp. v. ADJO Contr. Corp.*,
    2011 NY Slip Op 51508(U), 32 Misc. 3d 1231(A), 934 N.Y.S.2d 36 (Sup. Ct.) ...................... 6

*RJC Realty Holding Corp. v. Republic Franklin Ins. Co.*,
    2 N.Y.3d 158 (2004) .................................................................................................... 6

*Sec. Ins. Co. v. Lumbermens Mut. Cas. Co.*,
    826 A.2d 107 (Conn. 2003) ........................................................................................ 10

*Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*,
    98 N.Y.2d 435 (N.Y. 2002) ..................................................................................... 1, 4

**DOCKETED CASES**

*Del Monte Fresh Produce N.A., Inc. v. Transp. Ins. Co.*,
    No. CIV.A. 06 C 1658, 2006 WL 2331144 (N.D. Ill. Aug. 8, 2006) *aff'd,* 500 F.3d
    640 (7th Cir. 2007) ....................................................................................................... 2

*Dollar Phone Corp. v. St. Paul F&M Ins.*,
    No.CV-09-1640, 2012 U.S. Dist. LEXIS 45591 (E.D.N.Y. Mar. 9, 2012) .............................. 3

*Elite Brands, Inc. v. Pa. Gen. Ins.*,
    No. 02 Civ. 5623 (LTS)(RLE), 2004 U.S. Dist. LEXIS 17512 (S.D.N.Y. Sept. 2,
    2004) ............................................................................................................................ 3

*Energex Sys. Corp. v. Fireman's Fund Ins. Co.*,
    No. 96-CIV-5993 (JSM), 1997 WL 358007 (S.D.N.Y. June 25, 1997) ............................... 2

*Flowers v. Max Specialty Ins. Co.*,
    No. 13-0262, 2014 W. Va. LEXIS 630 (W. Va. June 4, 2014) ................................... 8, 9

*Hartford Cas. Ins. Co. v. Swift Distrib., Inc.*,
    No. S207172, 2014 Cal. LEXIS 3765 (Cal. 2014) ........................................................ 4

*Ill. Union Ins. Co. v. N. County Ob-Gyn Med. Group*,
   No. 09cv2123-LAB, 2010 U.S. Dist. LEXIS 50095 (S.D. Cal. May 18, 2010) ........................ 9

*Pasco v. State Auto. Mut. Ins. Co.*,
   No. 99AP-430, 1999 WL 1221633 (Ohio Ct. App. Dec. 21, 1999) ........................................ 7


**STATE RULES AND STATUTES**

Civ. Code § 1750. ................................................................................................................... 5


**OTHER AUTHORITIES**

RANDOM HOUSE UNABRIDGED DICTIONARY 76-77 (2d ed. 1993) ................................................ 5

**I.  SUMMARY OF ARGUMENT**

Implicit disparagement claims evidence a potential for coverage under applicable New York law[1] as General Star Indemnity Company's ("General Star") defense under a reservation of rights tacitly acknowledges.[2] But it improperly asks this court to assume the merits of the claims against its own insured in a manner directly contrary to settled New York law,[3] despite the absence of any adverse fact finding, in a vigorously contested lawsuit.[4]

No court has ever concluded, **on analogous facts**, that the "failure to conform" exclusion bars a defense for such claims. **[Dkt. 30:8-10 n.19-26, 28-30]** Virtually every state to address the right of reimbursement during the past decade has concluded that this remedy is unavailable—including all state Supreme Court decisions. **[Dkt. 21:24 n.55]** Nor does General Star's re-writing of its policy to render it self-liquidating, without proper notice to its insureds, pass muster. **[Dkt. 30:18-25]**

**II.  "IMPLICIT DISPARAGEMENT" IS ACTIONABLE UNDER NEW YORK, AS WELL AS CALIFORNIA LAW, AND POTENTIALLY COVERED CLAIMS ARE ASSERTED HERE**

**A.  General Star Ignores Driven Sports' Proof Of Damages in Its Motion**

Damages need not be expressly articulated under a specifically labeled claim to establish the potential for covered damages.[5] Here, false advertising claims premised on disparagement

---

[1] *Bridge Metal Indus., LLC. v. Travelers Indem. Co.*, 559 Fed. Appx. 15, 2014 U.S. App. LEXIS 4463, at *8-9 (2d Cir. (N.Y.) Mar. 11, 2014) ("[B]ecause there was 'a legal uncertainty as to insurance coverage,' *Hugo Boss*, 252 F.3d at 622 (italics omitted), due to doctrinal confusion regarding the concept of 'title' at the time of the Policy, Travelers's duty to defend the underlying actions was triggered.").

[2] *City of Johnstown, N.Y. v. Bankers Standard Ins. Co.*, 877 F.2d 1146, 1149 (2d Cir. (N.Y.) 1989), citing *Villa Charlotte Bronte, Inc. v. Commercial Union Ins. Co.*, 476 N.E.2d 640, 641 (N.Y. 1985) (A court will not relieve an insurer from its duty to defend unless it concludes "as a matter of law that there is no possible factual or legal basis on which the insurer might eventually be held to indemnify the insured.").

[3] *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 444 (N.Y. 2002) ("**The merits of the complaint are irrelevant** and, 'an insured's right to be accorded legal representation is a contractual right . . . and this right exists even if debatable theories are alleged in the pleading against the insured.' " (emphasis added)).

[4] *Village of Sylvan Beach, N.Y. v. Travelers Indem. Co.*, 55 F.3d 114, 115 (2d Cir. (N.Y.) 1995) ("[I]f there is a doubt as to whether the claim comes within the insurer's duty to indemnify, the insurer is generally required to furnish a defense, leaving the issue of indemnification to be settled after establishment of the insured's liability.");

[5] *Bank of the West v. Superior Court*, 833 P.2d 545, 550, 552 (Cal. 1992) ("'[U]nfair competition' . . . refer[s] to a civil wrong that can support an award of damages.").

triggered General Star's obligation to defend related suits,[6] forcing defendants in prior cases to repetitively assert the same fact allegations.[7] The consolidated *Olvera* and *Wagner* suits contend that Driven Sports violated California's CLRA by "disparaging the goods services and business of another by false or misleading representations of fact" and sought damages as well as "other and further relief." [8] **[SMF ¶27, 29 (¶66, prayer f, i)]** *Stewart* sought damages under Illinois law and under California's CLRA, as did the *Olvera* and *Wagner* suits, **[SMF ¶32 (¶23 fn. 5)]** including the reference "*et al*," to thereby encompass necessarily "competitor disparagement."[9]

### B. General Star Recycles The Same Discredited Arguments Rejected By The Ninth Circuit

Relying on the principles adopted under the accepted approach that "the construction of the terms of an insurance contract should be undertaken from the perspective of a layman, one 'untrained in the law or insurance,'"[10] the Ninth Circuit[11] ruled against General Star on a claim under the Lanham Act, which was fairly characterized as disparagement in an indistinguishable

---

[6]*Apartment Inv. & Mgmt. Co. v. Nutmeg Ins. Co.*, 593 F.3d 1188, 1196 (10th Cir. 2010) ("[I]nsurer cannot view the … complaint in isolation when it is aware [of] multiple complaints arising from a common core of operative facts[.]").

[7]*Travelers Ins. Companies v. Penda Corp.*, 974 F.2d 823, 828 (7th Cir. 1992) ("[A]llegations in the complaints filed in other, related cases … were sufficient to alert the insurer to the possibility of a covered claim and therefore trigger[] the duty to defend.").

[8]*Energex Sys. Corp. v. Fireman's Fund Ins. Co.*, No. 96-CIV-5993 (JSM), 1997 WL 358007, at *5 (S.D.N.Y. June 25, 1997) ("Finally, defendant contends that there is no duty to defend because the Anton/Bauer complaint seeks injunctive relief and not damages. While Anton/Bauer's prayer for relief does not specifically seek damages, it does seek whatever relief the Court deems just and proper. **Under New York law, this encompasses a claim for damages and the insurer must defend.** *Doyle v. Allstate Ins. Co.*, 1 N.Y.2d 439, 443, 154 N.Y.S.2d 10, 13 (1956)." (emphasis added)).

[9]*Del Monte Fresh Produce N.A., Inc. v. Transp. Ins. Co.*, No. CIV.A. 06 C 1658, 2006 WL 2331144, at *5, *6 (N.D. Ill. Aug. 8, 2006) *aff'd,* 500 F.3d 640 (7th Cir. 2007) ("Each complaint alleges Del Monte sent letters to competitors threatening litigation for marketing extra-sweet pineapples. . . . Del Monte's threats materialized into two patent infringement suits. . . . In addition, . . . Del Monte accused its competitors of 'stealing' its proprietary information. . . . [E]ach underlying [class action] complaint here alleges that Del Monte threatened its competitors with litigation, and publicly accused competitors of patent infringement.").

[10]*Tri-Star Theme Builders, Inc. v. OneBeacon Ins. Co.*, 426 F. App'x 506, 509 (9th Cir. 2011), citing *Sparks v. Republic Nat'l Life Ins. Co.,* 647 P.2d 1127, 1135 (Ariz. 1982).

[11]*Safety Dynamics, Inc. v. Gen. Star Indem. Co.*, 475 Fed. Appx. 213, 214 (9th Cir. (Az.) 2012) ("The complaint alleges that Safety Dynamics's false claims about its own product had the result of misleading consumers because it made Safety Dynamics's product look better versus ShotSpotter's. This is sufficient to state a covered claim for product disparagement, at least in the context of the duty to defend.")

false comparative advertising coverage action.[12] There, as here, various common law actions based on injurious falsehoods, which encompassed disparagement, were federalized in the Lanham Act.[13]

### C. General Star's Attempt to Distinguish Germane New York Coverage Cases Falls Flat

General Star asserts that "the *Dollar Phone*, *Elite Brands*, *JMZ USA* and *Natural Organics* cases apply New York law holding that disparagement requires statements that directly identify or **necessarily reference** a competitor or its products." **[Dkt. 32:12 (emphasis added)]** *Natural Organics*, however, found a clear implication of disparagement where the insured merely named a third party as an exclusive distributor because it implied the competitor's inventory was unauthorized.[14] In *Dollar Phone*,[15] *Elite Brands*,[16] and *JMZ USA*,[17] the allegations were inadequate to allege disparagement because, in each, there was no publication referring to a competitor, and any statements referred only to the insured's own product.

As the express allegations referenced below reveal, that is not true here. The *Craze*

---

[12] *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 245 (9th Cir. 1990) ("[A] false advertising cause of action under the Act is not limited to literal falsehoods; it extends to false representations made by implication or innuendo.").

[13] *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1347-48 (Fed. Cir. 1999) ("This portion of § 43(a) provides the basis for what are generally known as 'false advertising,' 'trade libel,' and 'product disparagement' claims." Citing 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 27:10, at 27-19 to 27-20 (4th ed. 1998)).

[14] *Natural Organics, Inc. v. OneBeacon Am. Ins. Co.*, 102 A.D.3d 756, 758 (2d Dept. 2013) (indirect statements fell "within the policy's coverage for…disparagement.)

[15] *Dollar Phone Corp. v. St. Paul F&M Ins.*, No.CV-09-1640, 2012 U.S. Dist. LEXIS 45591 at *25-26 (E.D.N.Y. Mar. 9, 2012) (No disparagement where advertisement only falsely stated the number of minutes on a prepaid phone card and holding "This does not … mean that the competitor's product must be identified by name and **it may be enough that there be some identifying statement that compares the advertised product to those sold by competitors**."); citing, e.g. *Acme United Corp. v. St. Paul Fire & Marine Ins. Co.*, 214 F. Appx. 596, 599-600 (7th Cir. 2007) (advertisements stating that insured's titanium products were "sharper, more durable, and longer lasting" drew sufficient comparison to plaintiff's steel products); and *E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.*, 590 F. Supp. 2d 1244, 1249, 1253 (N.D. Cal. 2008) (advertisement asserting that insured was the "'only' producer of 'all Java' and 'fully J2EE' software solutions" and that this "was an 'important differentiator' between competing products" disparaged insured's competitors by "**clear implication**").

[16] *Elite Brands, Inc. v. Pa. Gen. Ins. Co.*, 164 F. Appx. 60, 62 (2d Cir. 2006) (alleged effect of the presence of Plaintiff's lower-priced goods in the market was not disparagement); see *Elite Brands, Inc. v. Pa. Gen. Ins.*, No. 02 Civ. 5623 (LTS)(RLE), 2004 U.S. Dist. LEXIS 17512, 19 (S.D.N.Y. Sept. 2, 2004) for facts.

[17] *JMZ USA, Inc. v. Lumbermens Mut. Cas. Co.*, 36 A.D.3d 555, 557 (1st Dept. 2007) (no injury arising out of oral or written publication since injury instead arose from the mere presence of lower priced goods in the market.)

*Actions* allege statements that derogate competitors' products and tout Craze as superior to those of its competitors. **[Dkt. 30:9-11]** General Star ignores the fact that advertisements and marketing were alleged in each of the *Craze actions* and that the advertisement specifically identified in the *Stewart* action contains numerous disparaging statements directed at competitors.

### D. Even Under the Restrictive *Swift* Case Analysis, Implicit Disparagement is Asserted

General Star acknowledged the recent *Swift* decision which clarified that "disparagement" can be by "express mention **or by clear implication.**"[18] The extrinsic advertisements (which must be considered under New York[19] and California law[20]) did not derogate the competitor, but here they do.[21] General Star ignores Driven Sports' alleged violations of state statutes relating to implicit disparagement.[22] General Star's handpicked allegations ignore derogatory statements **[Dkt. 21:7-9 (§II(D)(1))]** about the competitor's products such as those expressly referenced in Driven Sports' Motion. **[Dkt. 32:4-5]**

Thus, the *Stewart* Complaint expressly identified a Driven Sports publication. It criticized competitors' products as "worthless", "poorly designed," and "awful" tasting, while implying that they use "crappy fillers" and touting the superiority of its own product, inferentially referred to in the other three complaints. **[SMF ¶27 (¶14 fn. 2)]** These published false statements violate the unfair competition statutes of Illinois, California, and other states

---

[18]**Dkt. 32:11 fn. 4**, citing *Hartford Cas. Ins. Co. v. Swift Distrib., Inc.*, 2014 Cal. LEXIS 3765, *20 (Cal. 2014).

[19]*Fitzpatrick v. American Honda Motor Co.*, 78 N.Y.2d 61, 66, 70 (1991).

[20]*Swift*, 2014 Cal. LEXIS 3765, at *36-37 ("[T]he **contents** of the catalog **were reasonably known** to Hartford and **should be considered** in determining whether the *Dahl* action set forth a possible claim of disparagement." [emphasis added]).

[21]*Id.* at *28, 31-39 (holding that mere infringement of a patent or trademark or generic assertions of the company's excellence did not amount to disparagement and recognizing that a publication that claims a superior feature of a business or product as distinct from all competitors, such as a claim to be the "only" producer of a certain kind of software or the "only" owner of a trademark, may be found to clearly or necessarily disparage another party even without express mention.)

[22]*Town of Massena*, 98 N.Y.2d at 443-44 (2002) (" '[T]he duty to defend arises whenever the allegations in a complaint against the insured fall within the scope of the risks undertaken by the insurer … [and, it is immaterial] that the complaint against the insured asserts additional claims which fall outside the policy's general coverage or within its exclusory provisions.'")

**[SMF ¶32 (¶5, 14, 23, 27)]** including Civ. Code § 1750, *et seq*. which prohibits disparaging competitors, **[SMF ¶32 (¶23)]** entitling class members to compensatory damages. **[SMF ¶32 (¶22, 27, 48, prayer (b))]**

The *Olvera* suit alleges that Driven Sports' published false statements are contrary to various California statutes including the Consumer Legal Remedies Act ("CLRA") **[SMF ¶27 (¶11, 43, 45, 59)]**, which the claimant is entitled to enforce **[SMF ¶27 (¶60, 61, 62, 63)]**, harming the public and the class by "unlawful methods of competition and or unfair acts as defined by Civ. Code § 1750, *et seq*." These include practices prohibited by the CLRA such as **"disparaging the goods, services, or business of another by false or misleading representations of fact" [SMF ¶27 (¶64, 66, 67)** (emphasis added)] for which claimants sought damages. **[SMF ¶27 (¶67, 70)]**

The *Wagner* suit identically alleges that Driven Sports' published false statements violate various California statutes, including the CLRA **[SMF ¶29 (¶11, 43, 45, 59)]**, which the claimant is entitled to enforce **[SMF ¶29 (¶60, 61, 62, 63)]**, harming the public and the class by "unlawful methods of competition and or unfair acts as defined by Civ. Code § 1750, *et seq*." These include practices prohibited by the CLRA such as "**disparaging the goods, services, or business of another by false or misleading representations of fact**." **[SMF ¶29 (¶64, 66, 67)** (emphasis added.)]. Wagner claims to have been damaged by this conduct. **[SMF ¶29 (¶67, 70)]**

These allegations allege something more than just false labeling; they assert deceptive advertising and marketing in addition to false labeling.[23] The *Craze Actions* also directly allege disparagement, as well as violation of state statutes providing for consumer enforcement of disparagement against competitors.[24] **[see Dkt. 30:10-11]** These allegations raise at least the

---

[23]RANDOM HOUSE UNABRIDGED DICTIONARY 76-77 (2d ed. 1993) ("And" is defined as "**1.** (used to connect grammatically coordinate words, phrases, or clauses) along or together with; as well as; in addition to; besides; also; moreover; *pens and pencils*.").

[24]General Star argues that these allegations were mistakenly included in the complaints, but has no evidence to support that theory other than a typographical error referring to the "Flushmate System." It is equally possible that the allegation should have referred to "Craze" instead.

possibility of coverage under the policy,[25] especially when combined with the available extrinsic advertising evidence, and trigger General Star's duty to defend.[26]

## III. THE "FAILURE TO CONFORM" EXCLUSION DOES NOT APPLY HERE

General Star fails to prove that the "failure to conform" exclusion applies here,[27] as it failed in *Safety Dynamics* for much the same reason.[28] General Star focused on false labeling coverage cases, citing numerous cases in its Opposition recognizing the distinction between allegations of an "advertising injury" and allegations of a "failure to conform." **[Dkt. 30:16-18]** The injury triggering the duty to defend here arises from the disparagement of competitors; it does not arise from the failure of *Craze* to list a product on its label.

Even if mislabeling was at the core, or the "gravamen" of the complaints,[29] and did constitute a "failure to conform", the additional allegations revealing the possibility of a disparagement claim trigger the duty to defend.[30] This is especially the case where Driven Sports' Opposition **[Dkt. 30:18-20]** distinguished each of General Star's cited cases. **[Dkt. 32:20-21]**

---

[25] *Automobile Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006) (emphasis added). ("the duty to defend is **'exceedingly broad'** and an insurer will be called upon to provide a defense whenever the **allegations** of the complaint **'suggest** . . . a reasonable **possibility of coverage**")

[26] If not sufficiently alleged in the *Craze actions*, it is certainly possible that the complaints could be amended to include allegations of disparagement given the existing allegations. See *QBE Ins. Corp. v. ADJO Contr. Corp.*, 2011 NY Slip Op 51508(U), ¶¶ 13-14, 32 Misc. 3d 1231(A), 1231A, 934 N.Y.S.2d 36 (Sup. Ct.) (duty to defend arises if extrinsic evidence shows possibility of amendment); and *Brewer v. Vill. of Old Field*, 311 F. Supp. 2d 382, 387 (E.D.N.Y. 2004) (recognizing duty to defend where there was the possibility of an amendment after dismissal of all covered claims.)

[27] *Cont'l Cas. Co. v. Rapid-Am. Corp.*, 80 N.Y.2d 640, 652 (1993); *see also RJC Realty Holding Corp. v. Republic Franklin Ins. Co.*, 2 N.Y.3d 158, 165 (2004) ("To negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case.")

[28] *Safety Dynamics*, 475 Fed. Appx. at 214 ("[The exclusion] is directed to the failure of goods, not the failure of advertising.").

[29] *Dish Network Corporation, LLC v. Arch Specialty Ins. Co.*, 659 F.3d 1010 (10th Cir. (Colo.) 2011); *Napoli, Kaiser & Bern, LLP v. Westport Ins. Corp.*, 295 F. Supp. 2d 335, 343 (S.D.N.Y. 2003) ("[T]he duty to defend is not restricted to the "core complaint" or to the underlying plaintiff's "primary" grievance.").

[30] *Napoli*, 295 F. Supp. 2d at 343, citing *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 486 N.Y.S.2d 873, 476 N.E.2d 272 (1984) ("In *Seaboard Surety Co.*, for example, the policy excluded any claim or suit 'arising out of' fraudulent or misrepresenting advertising. *Id.* at 274. Although misleading advertising was at the core of the underlying lawsuit, the court enforced the duty to defend because the claims in a complaint must fall '*solely* and *entirely* within the policy exclusions' for the insurer to be relieved of its duty to defend. *Id.* at 276 (internal quotation omitted).")

## IV. DEFENSE COSTS DO NOT REDUCE POLICY LIMITS

### A. General Star's Duty To Defend Is Independent Of "Supplementary Payments"

The defense benefit is included in the "Coverage B Personal and Advertising Injury" insuring agreement providing for the insurer's "right and duty to defend." **[SMF ¶7] Endorsement 8** states that the duty to defend ends when the limits of insurance are used up in the payment of judgments, settlements, or Supplementary Payments. **[SMF ¶17]** Nowhere, does the policy say that payments made under General Star's "right and duty to defend" are also part of "all expenses" within Supplementary Payments. These must logically be *supplementary*[31] to the principal policy benefits, otherwise the policy language would be superfluous[32] and there would be nothing for these payments to supplement.[33]

If General Star intended defense expenses incurred under its duty to defend to reduce limits, it could have listed them as a separate item reducing limits. General Star displayed this ability in its request that Driven Sports sign an agreement to repay **"Defense Expenses, Supplementary Payments or settlements or judgments** …" **[Dkt. 24-2:13:¶10]** General Star also sought an agreement "that defense expenses would erode the limits of liability." **[Dkt. 24-7:1]** If "Defense Expenses" were included within "Supplementary Payments" there would be no need to identify these items separately, or seek a secondary agreement from its insured. General Star was seeking to establish rights under the Policy that did not previously exist.

---

[31]"Supplement" is "1.a: something that completes or makes an addition." *Merriam-Webster.com*. Merriam-Webster, n.d. Web. 6 Aug. 2014. <http://www.merriam-webster.com/dictionary/supplement>.

[32]*Doe v. CIGNA Life Ins. Co.*, 304 F. Supp. 2d 477, 499-500 (W.D.N.Y. 2003) ("disabled" and "partially disabled" do not have the same meaning in an insurance policy, "[o]therwise, the two forms of coverage within the Policy would be basically similar in scope, rendering one or the other surplusage, contrary to accepted principles of contractual construction. 'Courts, in interpreting insurance policies, should strive to give 'meaning … to every sentence, clause, and word of a contract of insurance.''')

[33]*See Pasco v. State Auto. Mut. Ins. Co.*, No. 99AP-430, 1999 WL 1221633 (Ohio Ct. App. Dec. 21, 1999) (Six of the seven supplementary payments (b - g) are for discrete, specific, miscellaneous expense items that bear no relationship to Admiral's defense counsel's fees for the underlying suit, i.e., bail and other bonds, the insured's loss of earnings, the plaintiff's costs taxed against the insured in the underlying suit, and pre- and post-judgment interest. The remaining supplementary payment category a – "[a]ll expenses we incur" – must be interpreted in this context.).

### B. "All Expenses" Does Not Include Defense Expenses Such As Attorneys' Fees and Costs

General Star defines the term "all" to mean "all" or "any," but does not define the more important term, "expenses." The more reasonable interpretation of "expenses" in the phrase "all expenses we incur" in the "supplementary payment" section is that it does **not** include attorneys' fees and costs in the Underlying Action. A reasonable insured would not understand or expect that defense expenses reduce policy limits.[34] That is not clearly explained by its vague reference to "all expenses." If General Star wanted its policyholders to know that it was selling "defense within limits" insurance, it should have said so plainly.[35] Even if a contrary view were entertained, that would merely render the phrase ambiguous, requiring its construction against General Star.[36]

### C. At Most, General Star's Conflicting Construction of "All Expenses" Renders the Phrase Ambiguous

Even though the conflicting provisions causing that ambiguity may be different here than in other cases, the result is the same. Thus, *Flowers v. Max Specialty Ins.* held that the Supplemental Payments language was ambiguous because it did not clearly explain that the phrase "all expenses we incur" included attorneys' fees pursuant to its duty to defend, so that the definition reduced limiting when such fees were paid.[37] It reasoned, "[P]urported monetary

---

[34]*Belt Painting*, 100 N.Y.2d at 383 ("We read an insurance policy in light of 'common speech' and the reasonable expectations of a businessperson.").

[35]*New York Cent. Mut. Fire Ins. Co. v. Sweet*, 16 A.D.3d 1013, 1014 (3d Dept. 2005) ("While unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, ambiguous terms which may be interpreted in more than one manner must be resolved in favor of the insured.").

[36]*242-44 E. 77th St., LLC v. Greater N.Y. Mut. Ins. Co.*, 31 A.D.3d 100, 105 (1st Dept. 2006), *cited by Matter of E. 51st St. Crane Collapse Litig.*, 103 A.D.3d 401 (1st Dept. 2013) ("Where an insurance policy reasonably lends itself to two conflicting interpretations, its terms are ambiguous and must be construed in favor of the insured and against the insurer, the drafter of the policy language (*Matter of Mostow v. State Farm Ins. Cos.*, 88 N.Y.2d 321, 326 (1996); *see Breed v. Insurance Co. of N. Am.*, 46 N.Y.2d 351, 357 (1978)). **This rule of construction is especially true where, as here, the language at issue appears in an exclusion limiting the insurer's exposure**. '[P]olicy exclusions are given a strict and narrow construction, with any ambiguity resolved against the insurer' (*Belt Painting Corp. v. TIG Ins. Co.*, 100 N.Y.2d 377, 383 (2003); *see Moneta Dev. Corp. v. Generali Ins. Co. of Trieste & Venice*, 212 A.D.2d 428 (1995))." (emphasis added)).

[37]*Flowers v. Max Specialty Ins. Co.*, No. 13-0262, 2014 W. Va. LEXIS 630, at *19-20 (W. Va. June 4, 2014). ("The Supplementary Payments portion of the policy does not expressly reference attorney fees incurred as a result of Max Specialty's duty to defend … The Supplementary Payments language does state that Max Specialty will pay "All expenses we incur", **but it does not define expenses to include the attorney fees paid to an attorney pursuant to its duty to defend a suit as established in SECTION I – COVERAGES**" (emphasis added))

limitation on [the] duty to defend was not set out in clear, direct, unambiguous language. Limitations on [the] duty to defend must be so expressed."[38]

General Star fails to acknowledge that *East 51st Street* found that the Supplementary Payment provision was ambiguous "as to whether 'expenses' includes defense costs."[39] In deciding whether the term 'expenses' included defense costs, *Weber* found "it significant that the policy does not specifically define "expense" to include defense costs. This omission renders the term (at best) ambiguous."[40] *Weber* also reasoned that "if such 'expenses' are 'supplemental,' then the same expenses are *not* included within the liability limits of the policy."

### D. Absent a Specific Provision Identifying the Policies as Self-Liquidating, the Presumption Is That the Defense Provided is Outside of Policy Limits

General Star attempts to distinguish *Powerline Oil*[41] and *Ill. Union*[42] but falls flat. *Powerline* held a "burning limits" policy was not created because the policy lacked an explicit provision doing so. In *Ill. Union,* whether expenses were incurred by the insureds there or by insurer and insured here, is immaterial. In both cases, as here, the policy did not clarify that a 'reducing limits" policy was sold. General Star's Supplementary Payments coverage cases are readily distinguishable for the reasons addressed in Driven Sports' Motion.  **[Dkt. 21:18-21]** Driven Sports' Opposition addressed the non-New York cases cited in General Star's Motion. **[Dkt. 30:31-33]** These cases are not precedent and are not applicable to the facts of this case.

---

[38]*Id.* at *22.

[39]*E. 51st St. Crane*, 103 A.D.3d at 403; *confirmed on reconsideration* 114 A.D.3d 611, 611 (1st Dept. 2014).

[40]*Weber v. Indem. Ins. Co. of N. Am.*, 345 F. Supp. 2d 1139, 1147 (D. Haw. 2004)

[41]*Powerine Oil Co., Inc. v. Superior Court,* 37 Cal. 4th 377, 402 (2005) rejected "ultimate net loss" language as serving to create a "burning limits" policy stating "As the Court of Appeal observed, "**these** Central National **policies lack [an explicit] provision indicating the policies function as 'self-consuming' or 'burning limits' contracts**. (See Croskey et al., CAL. PRACTICE GUIDE: INSURANCE LITIGATION, supra, ¶ 7:357, p. 7A-90 (rev. # 1 1998).) **Had Central National wanted to include a burning limits clause, it knew how to do so**." [Emphasis added.])

[42]*Ill. Union Ins. Co. v. N. County Ob-Gyn Med. Group,* No. 09cv2123-LAB, 2010 U.S. Dist. LEXIS 50095, at *9 (S.D. Cal. May 18, 2010) (the policy was ambiguous because it didn't specifically explain that defense expenses were included in the definition of a 'loss' that would reduce policy limits even though it did include "legal costs, charges, fees and expenses incurred by any of the Insureds in defending Claims.")

## V. THE "MAJORITY RULE," AS WELL AS THE "MODERN TREND" DOES NOT IMPLY A RIGHT TO REIMBURSEMENT THAT IS NOT IN THE POLICY

Virtually every court to consider this question in the first instance in the last decade has concluded that there is no right to reimbursement where the policy does not expressly reserve that right.[43] While *Jerry's Sports Center*[44] did mention in 2010 that the majority rule was to permit reimbursement, it did so in passing reference to the superior court's holding and did not analyze the number of cases on each side; it was not true then and is not true now.[45] General Star cites a number of cases it asserts have recently ruled in favor of reimbursement, but they are virtually all district court cases, unreported, or from states that already had established a right to reimbursement such as California or New Jersey. **[Dkt. 32:26-27 fn. 10]** The last State Supreme Court to allow reimbursement was Connecticut (a notoriously pro-insurer forum) in 2003.[46] General Star also fails to address a number of New York decisions anticipating that the New York Court of Appeals would, if it were to address this issue, adopt the majority trend. **[See Dkt. 30:21-23]**

| **THE KILLIAN FIRM, P.C.** | **GAUNTLETT & ASSOCIATES** |
|---|---|
| Eugene Killian, Jr., Esq. [EK-9972] | |
| Ryan Milun, Esq. [RM-1062] | By: /s/ David A. Gauntlett |
| 14 Wall Street, 20th Floor | David A. Gauntlett, Esq. (*pro hac vice*) |
| New York, New York  10005 | James A. Lowe, Esq. (*pro hac vice*) |
| Telephone:  (212) 618-1409 | 18400 Von Karman, Suite 300 |
| Facsimile:  (212) 618-1705 | Irvine, California  92612 |
| ekillian@tkfpc.com | Telephone:  (949) 553-1010 |
| rmilun@tkfpc.com | Facsimile:  (949) 553-2050 |
| * * * AND * * * | info@gauntlettlaw.com |
| 555 Route 1 South, Suite 430 | jal@gauntlettlaw.com |
| Iselin, New Jersey  08830-3151 | |
| Telephone:  (732) 912-2100 | |
| Facsimile:  (732) 912-2101 | |

Attorneys for Defendant Driven Sports, Inc.

August 22, 2014

---

[43]**Dkt. 21:33 fn. 55** (collecting fifteen cases from 1994 to 2013, including seven Supreme Courts)

[44]*Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 606 Pa. 584, 594, 2 A.3d 526, 532 (2010)

[45]*See* **Dkt. 30:23 fn. 41 (ABA article stating that Majority rule is to NOT allow reimbursement.)**

[46]*Sec. Ins. Co. v. Lumbermens Mut. Cas. Co.*, 826 A.2d 107, 125 (Conn. 2003).

# CERTIFICATE OF SERVICE

**I hereby certify** that on August 22, 2014, I electronically filed the foregoing document with the Clerk of this Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

                                                    /s/ David A. Gauntlett

| **LOCAL COUNSEL:** | David A. Gauntlett, Esq. *[Pro Hac Vice]* |
|---|---|
| Eugene Killian, Jr. (EK 9972) | James A. Lowe, Esq. *[Pro Hac Vice]* |
| THE KILLIAN FIRM, P.C. | GAUNTLETT & ASSOCIATES |
| 14 Wall Street, 20th Floor | 18400 Von Karman, Suite 300 |
| New York, NY 10005 | Irvine, CA 92612 |
| Telephone: (212) 618-1409 | Telephone: (949) 553-1010 |
| Facsimile: (212) 618-1705 | Facsimile: (949) 553-2050 |
| *-and-* | info@gauntlettlaw.com |
| 555 Route 1 South, Suite 430 | jal@gauntlettlaw.com |
| Iselin, NJ 08830 | |
| Telephone: (732) 912-2100 | |
| Facsimile: (732) 912-2101 | |
| ekillian@tkfpc.com | |

Attorneys for Defendant Driven Sports, Inc.