# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GENERAL STAR INDEMNITY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>DRIVEN SPORTS, INC.,<br><br>Defendant. | **Civil Action No.: 2:14-cv-03579-JFB-ARL** |

## GENERAL STAR INDEMNITY COMPANY'S REPLY
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Cara Tseng Duffield (admitted *pro hac vice*)
John E. Howell (admitted *pro hac vice*)
WILEY REIN LLP
1776 K Street N.W.
Washington, DC 20006
(202) 719-7000
cduffield@wileyrein.com
jhowell@wileyrein.com

Vincent J. Proto, Esq.
BUDD LARNER P.C.
150 John F. Kennedy Parkway
Short Hills, NJ 07078-2703
(973) 315-4435
vproto@buddlarner.com

*Attorneys for Plaintiff General Star*
*Indemnity Company*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

I. The Craze Actions do not allege express or implied disparagement. ....................................1

II. Driven Sports' alleged failure to disclose the presence of methamphetamine in Craze triggers the Failure to Conform Exclusion. ................................................................3

III. Recoupment is warranted to prevent Driven Sports from retaining amounts to which it has no contractual right. ......................................................................................................4

IV. Supplementary Payments include defense expenses. ............................................................7

V. Conclusion ..............................................................................................................................9

# TABLE OF AUTHORITIES

**Federal Cases**

*Abner, Herrman & Brock, Inc. v. Great Northern Insurance Co.*,
   308 F. Supp. 2d 331 (S.D.N.Y. 2004)..........................................................................8

*American Family Home Insurance Co. v. Delia*,
   No. 12-CV-5380, 2013 WL 6061937 (E.D.N.Y. Nov. 15, 2013).........................................4, 5

*Dash v. Chicago Insurance Co.*,
   No. Civ.A.00–11911–DPW, 2004 WL 1932760 (D. Mass. Aug. 23, 2004) ............................6

*Dollar Phone Corp. v. St. Paul Fire & Marine Insurance Co.*,
   No. 09-cv-1640, 2012 WL 1077448 (E.D.N.Y. Mar. 9, 2012),
   *adopted by*, No. 09-cv-1640, 2012 WL 1078994 (E.D.N.Y. Mar. 30, 2012),
   *aff'd*, 514 F. App'x 21 (2d Cir. 2013)...............................................................1, 2, 4

*Ellite Brands, Inc. v. Pennsylvania General Insurance*,
   No. 02 civ 5623, 2004 WL 1945732 (S.D.N.Y. Sept. 2, 2004),
   *aff'd*, 164 F. App'x 60 (2d Cir. 2006).....................................................................2, 3

*Gotham Insurance Co. v. GLNX, Inc.*,
   No. 92-cv-6415, 1993 WL 312243 (S.D.N.Y. Aug. 6, 1993)...............................................4, 5

*Illinois Union Insurance Co. v. NRI Construction, Inc.*,
   846 F. Supp. 2d 1366 (N.D. Ga. 2012) ......................................................................6

*Infor Global Solutions (Michigan), Inc. v. St. Paul Fire & Marine Insurance Co.*,
   686 F. Supp. 2d 1005 (N.D. Cal. 2010) .....................................................................3

*Jewelers Mutual Insurance v. Milne Jewelry Co.*,
   No. 06-CV-243, 2006 WL 3716112 (D. Utah Dec. 14, 2006) ............................................3, 4

*Max Specialty Insurance Co. v. WSG Investors, LLC*,
   No. 1:09-cv-5237, 2012 WL 3150579 (E.D.N.Y. Apr. 20, 2012)............................................4

*Pennfield Oil Co. v. American Feed Industry Insurance Co. Risk Retention Group*,
   No. 8:05CV315, 2007 WL 1290138 (D. Neb. Mar. 12, 2007).................................................3

*Perdue Farms, Inc. v. Travelers Casualty & Surety Co. of America*,
   448 F.3d 252 (4th Cir. 2006) .................................................................................6

*R.C. Bigelow, Inc. v. Liberty Mutual Insurance Co.*,
   287 F.3d 242 (2d Cir. 2002).................................................................................2

*Resure, Inc. v. Chemical Distributors, Inc.*,
   927 F. Supp. 190 (M.D. La. 1996), *aff'd*, 114 F.3d 1184 (5th Cir. 1997)................................6

*Safety Dynamics, Inc. v. General Star Indemnity Co.*,
 475 F. App'x 213 (9th Cir. 2012) ................................................................................3

*Tria Beauty, Inc. v. National Fire Insurance Co.*,
 No. 12-cv05465 WHA, 2013 WL 2181649 (N.D. Cal. May 20, 2013) ......................3

*United National Insurance Co. v. SST Fitness Corp.*,
 309 F.3d 914 (6th Cir. 2002) ......................................................................................6

*U.S. Specialty Insurance Co. v. Liberty Partners L.P.*,
 No. 1:11-cv-3736, 2011 WL 5428971 (S.D.N.Y. Nov. 8, 2011) ...............................4

*XL Specialty Insurance Co. v. Level Global Investors, L.P.*,
 874 F. Supp. 2d 263 (S.D.N.Y. 2012) ........................................................................4

**State Cases**

*Certain Underwriters at Lloyd's London Subscribing to Policy No. SYN-1000263 v. Lacher & Lovell-Taylor, P.C.*,
 112 A.D.3d 434 (N.Y. App. Div. 2013) .................................................................4, 5

*Dupree v. Scottsdale Insurance Co.*,
 947 N.Y.S.2d 428 (N.Y. App. Div. 2012) ..................................................................4

*In re East 51st Street Crane Collapse Litigation*,
 960 N.Y.S.2d 364 (N.Y. App. Div. 2013) ..................................................................8

*Federal Insurance Co. v. Kozlowski*,
 792 N.Y.S.2d 397 (N.Y. App. Div. 2005) ...............................................................4, 5

*Flowers v. Max Specialty Insurance Co.*,
 No. 13-0262, 2014 WL 2562489 (W. Va. Jun. 4, 2014) ............................................8

*General Agents Insurance Co. of America, Inc. v. Midwest Sporting Goods Co.*,
 828 N.E.2d 1092 (Ill. 2005) ........................................................................................6

*Harleysville Mutual Insurance Co. v. Buzz Off Insect Shield, LLC*,
 692 S.E.2d 605 (N.C. 2010) .......................................................................................4

*Horace Mann Insurance Co. v. Hanke*,
 2013 MT 320, 372 Mont. 350, 312 P.3d 429 (Mont. 2013) .......................................6

*JMZ USA, Inc. v. Lumbermens Mutual Casualty Co.*,
 828 N.Y.S.2d 385 (N.Y. App. Div. 2007) ..............................................................2, 3

*K2 Investment Group, LLC v. American Guarantee & Liability Insurance Co.*,
 983 N.Y.S.2d 761 (N.Y. 2014) ...................................................................................6

*National Surety Corp. v. Immunex Corp.*,
 297 P.3d 688 (Wash. 2013) ................................................................................................6

*Natural Organics, Inc. v. OneBeacon America Insurance Co.*,
 959 N.Y.S.2d 204 (N.Y. App. Div. 2013) ...........................................................................3

*Nucor Corp. v. Employers Insurance Co.*,
 No. 10-0174, 2012 WL 6117029 (Ariz. Ct. App. Nov. 23, 2012) ........................................6

*Trustees of Princeton Univeristy v. National Union Fire Insurance Co.*,
 839 N.Y.S.2d 437, 2007 WL 1063870, 2007 slip op. 50753(U) (N.Y. Sup. Ct. 2007) ............4

The undisputed facts of record and New York law show that the Policy does not afford coverage for the Craze Actions; that General Star is entitled to recoup the defense expenses it has paid; and that any defense expenses not repaid would erode the Policy's limit of liability. Driven Sports has not raised any issue of material fact to prevent the entry of summary judgment in General Star's favor. On coverage, Driven Sports contends that the Craze Actions allege that Driven Sports made negative statements about the taste of and ingredients in its competitors' products, but a simple reading of the complaints in those actions belies these arguments. On recoupment, Driven Sports attempts to distinguish New York authority uniformly upholding an insurer's right to reimbursement, but its purported distinctions are immaterial to the courts' reasoning. On erosion, Driven Sports proffers no reasonable interpretation of the Policy's unambiguous language to support its argument that Supplementary Payments do not include defense expenses.

General Star therefore respectfully requests that the Court enter summary judgment in its favor on all counts of its complaint.

## I. The Craze Actions do not allege express or implied disparagement.

As Driven Sports recognizes, four cases—*Dollar Phone*, *Elite Brands*, *JMZ*, and *Natural Organics*—define "disparagement" within the "personal and advertising injury" coverage of a CGL policy under New York law. Under these cases, the Craze Actions must allege that Driven Sports "specifically referred to the competitor's products or touted [it]s own products as superior to those of its competitors" by making "some identifying statement" comparing its products with those of competitors. *Dollar Phone Corp. v. St. Paul Fire & Marine Ins. Co.*, No. 09-cv-1640, 2012 WL 1077448, at *8-9 (E.D.N.Y. Mar. 9, 2012), *adopted by*, 2012 WL 1078994 (E.D.N.Y. Mar. 30, 2012), *aff'd*, 514 F. App'x 21 (2d Cir. 2013). Contrary to Driven Sports' characterization, General Star's argument is not that the Craze Actions fail to meet each element

of the tort of commercial disparagement.[1]  DS Opp. at 6 (ECF Doc. No. 30).  Rather, the actions are not covered because they do not contain factual allegations that Driven Sports published material expressly or impliedly disparaging another organization's product.

Driven Sports continues to assert the fiction that the Craze Actions "directly allege express disparagement of products competing with Craze" based on Driven Sports' website.  DS Opp. at 3.  But Driven Sports does not and cannot cite any paragraph of the underlying complaints that makes such allegations, because the Craze Actions do not allege any statements about competitors' products or reference statements about "taste," "fillers," "arginine," etc.  The actions make straightforward allegations that Driven Sports failed to disclose that Craze contains a methamphetamine analog.  Driven Sports cannot rewrite the Craze Actions to include website statements that are irrelevant to the injuries plaintiffs allege.

Nor are the actual allegations in the Craze Actions sufficient to constitute implied disparagement.  New York cases reject tenuous arguments that an insured's statements or actions to advertise its own product somehow disparage a competitor absent specific references or identifying statements.  *See Dollar Phone*, 2012 WL 1077448, at *8-*9 (no disparagement where negative comparison was not self-contained in insured's advertising and only could be discerned by reviewing insured's and competitor's products); *Elite Brands, Inc. v. Pa. Gen. Ins.*, No. 02-cv-6523, 2004 WL 1945732, at *6 (S.D.N.Y. Sept. 2, 2004) (no disparagement where competitor alleged consumers would believe its products were overpriced if compared to insured's product

---

[1]  Driven Sports incorrectly contends that the cases cited by General Star concern common law disparagement claims, but the underlying cases involved various state and federal false advertising and unfair competition statutes.  *See, e.g., Dollar Phone*, 2012 WL 1077448, at * 1 ("claims for violations of various federal and state laws, including a false advertising claim under the Lanham Act "); *JMZ USA, Inc. v. Lumbermens Mut. Cas. Co.*, 828 N.Y.S.2d 385, 386 (N.Y. App. Div. 2007) (underlying claim alleged "tortious interference with contract, tortious interference with prospective business advantage, and violation of Florida's deceptive and unfair trade practices statute"); *R.C. Bigelow, Inc. v. Liberty Mut. Ins. Co.*, 287 F.3d 242, 244 (2d Cir. 2002) ("trade dress infringement, false advertising, unfair competition, and trade dress dilution, arising under . . . the Lanham Act . . . and under state statutes and common law").

catalog), *aff'd* 164 F. App'x 60 (2d Cir. 2006); *JMZ USA*, 828 N.Y.S.2d at 386 (alleged effect of the "presence of [the insured]'s goods in the market" insufficient to trigger coverage); *Natural Organics, Inc. v. OneBeacon Am. Ins. Co.*, 959 N.Y.S.2d 204, 207 (N.Y. App. Div. 2013) (statement that company was "exclusive" distributor necessarily implied competitor's products were unauthorized).

## II. Driven Sports' alleged failure to disclose the presence of methamphetamine in Craze triggers the Failure to Conform Exclusion.

Like its disparagement argument, Driven Sports' contention that the Failure to Conform Exclusion does not apply is based on its attempt to rewrite the Craze Actions to add unpled allegations and ignore the plaintiffs' actual claims of injury. General Star and Driven Sports appear to agree that the Failure to Conform Exclusion bars coverage for claims alleging that the insured made specified misstatements about its own product but would not bar coverage for claims that instead arise out of misstatements an insured made about a competitor's product.[2] As discussed above, the Craze Actions do not allege that Driven Sports disparaged any competitor's product; rather, they allege injury arising out of Driven Sports' misstatements about its own Craze supplement.

Driven Sports also suggests that the Craze Actions do not implicate any statement of "quality or performance." DS Opp. at 8, 9. But the plaintiffs squarely allege that Driven Sports misrepresented product quality by failing to disclose the presence of methamphetamine in Craze. Unlike the statements in *Jewelers Mutual Insurance v. Milne Jewelry Co.*, No. 06-CV-243, 2006

---

[2] *See, e.g.,* GS Mem. at 14-17 (ECF Doc. No. 19-1) (discussing *Dollar Phone*, *PCB Piezotronics*, *RC Bigelow*, and *Buzz-Off Insect Shield*). The cases Driven Sports cites uphold the same distinction and are based upon the factual allegations in the claims at issue. DS Opp. at 9-10 (discussing *Pennfield Oil Co. v. Am. Feed Indus. Ins. Co. Risk Retention Grp.*, No. 8:05CV315, 2007 WL 1290138 (D. Neb. Mar. 12, 2007); *Infor Global Solutions (Michigan), Inc. v. St. Paul Fire & Marine Insurance Co.*, 686 F. Supp. 2d 1005, 1007 (N.D. Cal. 2010); and *Tria Beauty, Inc. v. National Fire Insurance Co.*, No. 12-cv05465 WHA, 2013 WL 2181649, at *8 (N.D. Cal. May 20, 2013)). The case *Safety Dynamics, Inc. v. General Star Indemnity Co.*, 475 F. App'x 213 (9th Cir. 2012), held that the exclusion would apply to suits by consumers but not competitors, a distinction that New York courts have rejected. *See* GS Opp. at 13.

WL 3716112, at *3 (D. Utah Dec. 14, 2006), that Driven Sports cites, the alleged misrepresentation here about the covert inclusion of an illegal, synthetic substance is a failure to conform with a statement of product "quality" whether "quality" is interpreted to mean a product "characteristic" or product "fitness" for a certain purpose. The failure of a product to match its fundamental advertised features is a failure to conform with a statement of quality or performance. *Dollar Phone*, 514 F. App'x at 22 (number of minutes on phone cards constituted a statement of product quality); *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, LLC*, 692 S.E.2d 605, 622 (N.C. 2010) (exclusion applied where product was advertised as "natural" but allegedly contained a "synthetic chemical compound").

### III. Recoupment is warranted to prevent Driven Sports from retaining amounts to which it has no contractual right.

New York cases from state and federal courts unequivocally provide that an insurer may recoup defense expenses following a determination of no coverage. *See Certain Underwriters at Lloyd's London Subscribing to Policy No. SYN-1000263 v. Lacher & Lovell-Taylor, P.C.*, 112 A.D.3d 434, 434 (N.Y. App. Div. 2013); *Dupree v. Scottsdale Ins. Co.*, 947 N.Y.S.2d 428, 429 (N.Y. App. Div. 2012); *Trs. of Princeton Univ. v. Nat'l Union Fire Ins. Co.*, 839 N.Y.S.2d 437, 2007 WL 1063870 *5 (N.Y. Sup. Ct. 2007), *aff'd*, 859 N.Y.S.2d 174 (N.Y. App. Div. 2008); *Fed. Ins. Co. v. Kozlowski*, 792 N.Y.S.2d 397, 404 (N.Y. App. Div. 2005); *Am. Family Home Ins. Co. v. Delia*, No. 12-CV-5380, 2013 WL 6061937, at *2 (E.D.N.Y. Nov. 15, 2013); *XL Specialty Ins. Co. v. Level Global Investors, L.P.*, 874 F. Supp. 2d 263, 282, 288 (S.D.N.Y. 2012); *Max Specialty Ins. Co. v. WSG Investors, LLC*, No. 1:09-cv-5237, 2012 WL 3150579, at *8 (E.D.N.Y. Apr. 20, 2012); *U.S. Specialty Ins. Co. v. Liberty Partners L.P.*, No. 11-cv-3736, 2011 WL 5428971, at *5 (S.D.N.Y. Nov. 8, 2011); *Gotham Ins. Co. v. GLNX, Inc.*, No. 92-cv-6415, 1993 WL 312243, at *2 (S.D.N.Y. Aug. 6, 1993).

Driven Sports cites no case applying New York law that reached a contrary result. Its attempt to minimize *GLNX* as "old" therefore falls flat as neither *GLNX* nor its reasoning has been disapproved by any New York court or the Second Circuit. Indeed, as recently as last December, the First Department of the Supreme Court's Appellate Division affirmed an insurer's right to reimbursement of defense costs for non-covered claims in *Lacher & Lovell-Taylor*, where the insurer "reserved its right to seek reimbursement of its defense costs in the event of a finding of no coverage." 112 A.D.3d at 435.

Driven Sports seeks to distinguish other cases by intimating that they only concern directors and officers ("D&O") liability insurance policies with express recoupment provisions. DS Opp. at 17-18. None of those cases cited a contractual recoupment provision as the basis for its analysis. Indeed, the policies at issue in *Lacher & Lovell-Taylor*, *Kozlowski*, *Delia*, *WSG Investors*, *Level Global Investors,* and *Liberty Partners, L.P.*, did not contain such provisions.[3] Nor do New York cases limit recoupment to D&O policies that do not contain a duty to defend. *WSG Investors* involved a duty-to-defend commercial general liability policy like the Policy here. *See* GS RJN, Exhibit 7 at RJN379. *GLNX* also involved a general liability policy. 1993 WL 312243, at *1. *Kozlowski* and *Lacher & Lovell-Taylor* addressed duty-to-defend coverage. *Kozlowski*, 792 N.Y.S.2d at 398; GS RJN Exhibit 1 at RJN003. And this court's recent conclusion in *Delia* that "American is entitled to recoup $41,227.95 as costs incurred in defending Delia in the third-party action despite there being no contractual obligation to do so" involved a homeowners policy. 2013 WL 6061937, at *2.

---

3     *See* General Star's Request for Judicial Notice in Support of its Motion for Summary Judgment ("GS RJN"), Exhibit 1 at RJN003 (*Lacher & Lovell-Taylor*); Exhibit 5 at RJN 297, 312 (*Delia*); Exhibit 7 at RJN379, RJN386 (*WSG Investors*); Exhibit 3 at RJN052 (*Level Global*); Exhibit 6 at RJN 331 (*Liberty Partners*). Neither the *Kozlowski* court, nor the insurer in seeking summary judgment, discussed any such policy provision, and the copy of the policy available from court records does not reflect such language. *See* GS RJN Exhibit 4 at RJN 114, RJN171; Federal Insurance Company's Memorandum in Support of Cross-Motion for Partial Summary Judgment, *Federal Ins. Co. v. Tyco Int'l, LTD*, No. 600507/03, 2005 WL 6312752 (N.Y. Sup. Ct., N.Y. Cnty. filed Oct. 14, 2005).

In light of this uncontroverted New York authority supporting recoupment, the position taken by other jurisdictions is not controlling or even persuasive, particularly as Driven Sports' characterization of a "majority rule" disfavoring recoupment is overstated.[4] Driven Sports urges the Court to follow the holdings in *General Agents Insurance Co. v. Midwest Sporting Goods Co. of America,* 828 N.E.2d 1092 (Ill. 2005), and *National Surety Corp. v. Immunex Corp.*, 297 P.3d 688 (Wash. 2013). These cases principally reason that an insured is not unjustly enriched in the absence of recoupment because, in paying defense expenses for non-covered suits, the insurer purportedly benefits by avoiding "coverage by estoppel" and breach of contract and bad faith claims. *Midwest Sporting Goods Co.,* 828 N.E.2d at 1102-03; *Immunex*, 297 P.3d 688 at 691. Under New York law, this reasoning has no purchase: the New York Court of Appeals recently confirmed the longstanding rule that there is no "coverage by estoppel" in New York. *K2 Inv. Grp., LLC v. Am. Guar. & Liab. Ins. Co.*, 983 N.Y.S.2d 761, 763-64 (N.Y. 2014). Moreover, the absence of a penalty for breach of contract or "bad faith" is not a benefit to the insurer negating the unjust enrichment of the insured. By definition, if an insurer is entitled to recoupment, there was no duty to defend and could be no liability for breach of contract or "bad faith." Notably, the insured in *Lacher & Lovell-Taylor* relied on precisely the same arguments

---

[4] The seminar article Driven Sports cites states that "there is a fairly even split" among jurisdictions over recoupment. Bob Allen, Gary Thompson, Sara M. Thorpe, *Reversing Course: Can an Insurer Seek Reimbursement From Its Policyholder For Amounts Related to Noncovered Claims?*, at 3, https://apps.americanbar.org/litigation/committees/insurance/docs/2011-cle-materials/11-ReimbursementPaymentClaims/11aReversingCourseCanInsurer.pdf. Driven Sports cites the article to support a "modern trend" disfavoring recoupment, but the article's relevance on that front is questionable as it does not examine the continuing validity of insurers' recoupment rights in the many jurisdictions that have long recognized it and also predates recent decisions supporting recoupment. *Horace Mann Ins. Co. v. Hanke,* 312 P.3d 429, 434 (Mont. 2013) (making clear that an "insurer may seek to recover the expenses that the insurer incurred in defending a claim outside of the insured's policy coverage"); *Nucor Corp. v. Emp'rs Ins. Co.*, No. 10-0174, 2012 WL 6117029, at *4 (Ariz. Ct. App. Nov. 23, 2012); *Ill. Union Ins. Co. v. NRI Constr., Inc.*, 846 F. Supp. 2d 1366, 1377 (N.D. Ga. 2012). Moreover, some of the cases classified as disapproving recoupment actually allow the insurer to recoup uncovered amounts. *United Nat'l Ins. Co. v. SST Fitness Corp.*, 309 F.3d 914, 921 (6th Cir. 2002); *Resure, Inc. v. Chem. Distributors, Inc.*, 927 F. Supp. 190, 194 (M.D. La. 1996), *aff'd*, 114 F.3d 1184 (5th Cir. 1997). Others merely involved allocation in "mixed actions," not suits falling entirely outside of coverage. *See Perdue Farms, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 448 F.3d 252, 258 (4th Cir. 2006); *Dash v. Chicago Ins. Co.*, No. Civ.A.00–11911–DPW, 2004 WL 1932760, at *10 (D. Mass. Aug. 23, 2004).

and case law, but the Appellate Division was not persuaded and held that the insurer could reserve its right to reimbursement under New York law. *See* GS RJN, Exhibit 2 at RJN036-RJN047.

Driven Sports contends further that permitting General Star to recover amounts that were never covered under the Policy would somehow transgress the "exceedingly broad duty to defend" that extends to the "entire action." DS Opp. at 14. This concern is misplaced. The Craze Actions are not "mixed" actions with General Star seeking to allocate the non-covered portions of a partially-covered claim. The suits are outside of coverage in their entirety. General Star therefore does not seek an "extra-contractual" right. To the contrary, as a matter of New York law, it is entitled to recover amounts Driven Sports demanded that are outside of the contractual defense obligation for which Driven Sports bargained.

Finally, contrary to Driven Sports' argument, General Star never "admitted" that New York law does not permit recoupment of uncovered defense expenses. *See id.* at 12. General Star proposed a non-waiver agreement that would memorialize mutually convenient mechanisms for the submission and payment of defense expenses and recoupment of such amounts. *E.g.*, Exhibit 9 to Declaration of Cara T. Duffield, ("Duffield Decl.") (ECF Doc. No. 19-13) at 12-16. This effort to forestall litigation can have no effect on the Policy, which predates the proposal, or on General Star's rights available under New York law.

## IV. Supplementary Payments include defense expenses.

Driven Sports admits, as it must, that Supplementary Payments reduce the Policy's limit of liability. DS Opp. at 19. It continues to argue, however, that Supplementary Payments do not include defense expenses; that New York law supports this interpretation; and that, pre-litigation, General Star conceded that defense expenses do not erode the Policy's limit. Each of these arguments fails.

Driven Sports' attempted textual arguments founder on the Policy's unambiguous language defining Supplementary Payments as "all expenses we incur" for "any 'suit' against an insured we defend." Driven Sports half-heartedly contends that defense expenses are not "supplementary" payments because defense expenses constitute a "primary" benefit but ultimately concedes that "all" means "all." DS Opp. 22. Driven Sports next asserts that defense expenses may not constitute "expenses." But the term "expense" is not ambiguous. "Expense" means "something paid out to attain a goal or accomplish a purpose." Webster's II New College Dictionary 402 (3d Ed. 2005). Amounts paid out for counsel to accomplish Driven Sports' defense indisputably are "expenses."

Driven Sports also misinterprets *In re East 51st Street Crane Collapse Litigation*, 960 N.Y.S.2d 364 (N.Y. App. Div. 2013). The *E. 51st Street* court necessarily reasoned that supplementary payments include defense expenses. *See id.* at 403. Had it not so concluded, the supplementary payments provision there could not conflict with the policy provision stating that the duty to defend would end only after exhaustion of the policy by other kinds of payment. The Policy here contains no conflict.[5]

Finally, the unexecuted, draft non-waiver agreement is irrelevant to the interpretation of the Policy. It is well-established that courts "may not consider extrinsic evidence to alter or interpret [the] meaning" of an unambiguous contract. *Abner, Herrman & Brock, Inc. v. Great N. Ins. Co.*, 308 F. Supp. 2d 331, 336 (S.D.N.Y. 2004). General Star's attempt to reach and

---

[5] Similarly, in *Flowers v. Max Specialty Insurance Co.*, No. 13-0262, 2014 WL 2562489 (W. Va. Jun. 4, 2014), the court held that the insurer could not terminate its duty to defend after it paid more than the applicable limit in defense expenses because the policy stated that the duty to defend would end only when the insurer had "used up the applicable limits of insurance in the payment of judgments or settlements . . . ." *Id.* at * 6, *8-10. Here, in contrast, the Policy expressly states that "[o]ur right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments, settlements <u>or</u> Supplementary Payments." Policy, CGL Coverage Part, Coverage B.1.a.(2), as amended by End. 8. Notably, in *Flowers*, the insured did not contest the trial court's holding that defense expenses would erode the policy's limit, only that the insurer could not terminate its duty to defend. *See* 2014 WL 2562489, at *15 n.4.

8

memorialize an agreement with Driven Sports before instituting litigation is not an "admission" of anything. As Driven Sports acknowledges, on November 1, 2013 and March 18, 2014, General Star already had set forth its interpretation that defense expenses erode the Policy. DS SOF ¶ 40 (ECF Doc. No. 22). The proposed non-waiver agreement defined the term "Defense Expenses" because it sought to establish certain procedures specific to such expenses as opposed to all Supplementary Payments generally. The proposed agreement does not alter the unambiguous Policy language.

**V.     Conclusion**

For the foregoing reasons, General Star respectfully requests that the Court enter summary judgment in its favor, including declarations that it has no duty to defend or indemnify Driven Sports for the Craze Actions; that Driven Sports must return all amounts General Star has paid for its defense in the Craze Actions; and that any amounts Driven Sports fails to repay reduce the Policy's limit of liability; and judgment in the amount of $116,018.53. *See* Second Declaration of David Soucy ¶ 3.

Date:  August 22, 2014                                     Respectfully submitted,

/s/ Cara Tseng Duffield
Cara Tseng Duffield (admitted *pro hac vice*)
John E. Howell (admitted *pro hac vice*)
WILEY REIN LLP
1776 K Street N.W.
Washington, DC 20006
(202) 719-7000
cduffield@wileyrein.com
jhowell@wileyrein.com

Vincent J. Proto, Esq.
BUDD LARNER P.C.
150 John F. Kennedy Parkway
Short Hills, NJ 07078-2703
(973) 315-4435
vproto@buddlarner.com

*Attorneys for Plaintiff General Star Indemnity Company*

9